[Civ. No. 12687. Fourth Dist., Div. One. Feb. 19, 1974.]

LESTER B. TROUT, Plaintiff and Appellant, v.
ROBERT B. CARLESON, as Director, etc., Defendant and Appellant.

## COUNSEL

Quin Denvir, Richard Gonzales and Armando M. Menocal III for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco and William R. Winship, Jr., Deputy Attorneys General, for Defendant and Appellant.

## OPINION

**WHELAN, J.**—In this case there are cross-appeals. Plaintiff Lester B. Trout appeals from an order granting him attorney fees because the amount is less than his attorney requested. The appeal of defendant Robert B. Carle-

son, Director of the California State Department of Social Welfare (the Director), is based upon his claim no fees should have been allowed.

Trout, in Imperial County, had filed a petition for aid as a needy disabled person, under the provisions of Welfare and Institutions Code sections 13500 to 13701, to commence on October 1, 1970. After a hearing, he was found to have been disabled within the meaning of the act as of May 1, 1971, and payment of aid was ordered to commence as of that date. The Director accepted that decision on October 6, 1971.

On August 31, 1972, Trout, in El Centro, verified a petition for writ of mandate which was filed September 15, 1972, in the superior court in San Diego County. That court granted a peremptory writ directing the Director to pay the aid for the period October 1, 1970, through May 1, 1971.

On December 13, 1972, the trial court ordered that Trout be awarded reasonable attorney fees in the amount of $400 pursuant to Welfare and Institutions Code section 10962.

That section reads: "The applicant or recipient or the affected county, within one year after receiving notice of the director's final decision, may file a petition with the superior court, under the provisions of Section 1094.5 of the Code of Civil Procedure, praying for a review of the entire proceedings in the matter, upon questions of law involved in the case. Such review, if granted, shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision. The director shall be the sole respondent in such proceedings. Immediately upon being served the director shall serve a copy of the petition on the other party entitled to judicial review and such party shall have the right to intervene in the proceedings.

"No filing fee shall be required for the filing of a petition pursuant to this section. Any such petition to the superior court shall be entitled to a preference in setting a date for hearing on the petition. No bond shall be required in the case of any petition for review, nor in any appeal therefrom. The applicant or recipient shall be entitled to reasonable attorney's fees and costs, if he obtains a decision in his favor."

The attorney who represented Trout in the trial court, and who represents him on this appeal, is employed by California Rural Legal Assistance, Inc. (CRLA), a nonprofit corporation partially funded by the Office of Economic Opportunity (42 U.S.C.A. ch. 34, § 2809(a)(3)), as stated in Trout's petition for fees. That petition states also that Trout has not paid, and is not obligated to pay, fees to his counsel. The request was for an award of $700.

The attorney's declaration in support of the application for fees states: "Any attorney's fees awarded will in no way inure to my personal benefit. Such an award would go directly to California Rural Legal Assistance, Inc., a non-profit corporation, to be used for the purpose of providing legal services to the poor."

Trout's opening brief states: "A person eligible for CRLA legal representation is not personally charged any amount for legal services rendered. He or she is not asked or required to make any payments for legal services, either out of his or her personal resources or on a contingent basis, i.e., out of any recovery achieved in the case. However, in a case where the party is entitled to an award of attorney's fees from the opposing party, either by direct authority of a statute or under the equity powers of the court, CRLA informs the client that attorney's fees will be sought on the client's behalf. The client is further informed that he or she will be expected to turn over any award to CRLA for its use in carrying out its program, and the client's consent to this arrangement is then obtained. In accordance with this policy, respondent Trout has agreed to turn over to CRLA any attorney's fees awarded in this case. The fees will in no way inure to the personal benefit of any lawyer. They will be used by CRLA to defray the costs of providing free legal representation for clients meeting the financial eligibility guidelines."

■ We will dispose first of Trout's contention the court's award was unreasonable in amount.

No evidence was presented to the court other than the statements in the declaration in support of the application, as follows: "I spent considerable time in legal and factual research, drafting of pleadings, consultation with medical experts, and two court appearances, one to obtain the alternative writ and one to argue in opposition to the return on such writ. In all, I would estimate that I have spent at least 20 hours in the preparation and prosecution of this action on behalf of Mr. Trout.

"The Imperial County Bar Association Schedule of Recommended Minimum Fees (1971) recommends a minimum fee of $250 for preparation of a Superior Court complaint or petition and a minimum fee of $35.00 per hour for office time, consultation, research, general preparation and travel. In light of this schedule, I believe that an award of $700 would be a reasonable attorney's fee in the action."

The sole argument presented, that the court abused its discretion in fixing the amount, is based upon this remark of the trial judge: "And I see that there are 20 hours that Mr. Denvir has spent. I am not going to be

probably as generous as I frankly might if it were some private group. I don't know, but I feel that under the circumstances, that $20.00 an hour is sufficient, and so I will award $400.00."

Among the factors the court might have considered were the amount involved and the result obtained by the attorney. (*Estate of Schnell,* 82 Cal.App.2d 170 [185 P.2d 854]; *Berry* v. *Chaplin,* 74 Cal.App.2d 669, 678 [169 P.2d 453].) In this case it was seven months of benefits under a program that allows a statewide average of $100 per month to all recipients of such aid, adjusted upward to allow for cost-of-living increases after January 1, 1964. (Welf. & Inst. Code, §§ 13700 and 13701.)

At the time the action was taken—12 months after the initial award was put into effect—there was not involved a matter of present survival, as in the case of *Roberts* v. *Brian,* 30 Cal.App.3d 427 [106 Cal.Rptr. 360], in which, as a matter of fact, the unfortunate applicant for special medical care died pending the several appeals.

The evidence presented by affidavit was as to a recommended rate of compensation among members of the Imperial County Bar Association. It does not appear that counsel was a member of that association. To the extent that such recommended minimum fee schedule has any evidentiary value, we note that the mandate proceeding was filed in the superior court in San Diego County and all proceedings thereafter were in that county. There is no evidence as to the recommended minimum fees in San Diego County. The court did not take judicial notice of such a schedule. However, the trial court, being familiar with the services rendered and with the value of legal services in the community, could fix a fee based upon its own knowledge and experience. (*Estate of Schnell, supra,* 82 Cal.App.2d 170; *Estate of Straus,* 144 Cal. 553 [77 P. 1122].)

We conclude Trout has not shown any abuse of discretion by the trial judge in finding $400 to be a reasonable fee in the circumstances.

We make the further observation that if the allowance of fees was proper, it would not necessarily be improper to give consideration to the fact that Trout had not incurred any obligation for fees. Let it also be assumed for the sake of argument that the fee requested by Trout's counsel might have exceeded the cost to CRLA of the services rendered, including all elements of a correct cost accounting, and that there would have been, therefore, an excess of the fees over the full cost, which represented a profit to CRLA. If such were the fact, we would not subscribe to the theory that such a method of allowing fees was a proper method of spreading the cost of legal

services to indigent litigants, in the absence of a declared governmental policy to that effect.

The Director's objection to an award in any amount is because it is stated Trout has not incurred any obligation to pay fees. In support of his objection, he cites *City of Los Angeles* v. *Knapp,* 7 Cal.2d 168, 173, 174 [60 P.2d 127], where it was said:"Where the court is authorized by statute to allow attorneys' fees in certain actions or proceedings, such allowance must be made to the party to the action for fees paid or incurred by him, and *not directly to the attorney, who is not a party to the action.* . . .

". . . Defendants' attorneys' fees are expressly mentioned in section 1255a of the Code of Civil Procedure, as an item to be included in the award of costs. The allowance of attorneys' fees is made to reimburse the defendant for fees which he has paid, or to indemnify him for fees which he has not paid, but has incurred."

The Director quotes the following also: "When attorney's fees, in addition to ordinary costs, are allowable by statute, they can, as a general rule, be taxed only when shown to have been actually charged to, or paid by, the party seeking to recover them." (14 Am.Jur. § 63, p. 39.)

Statutes providing for the payment of attorney fees take different forms, depending upon the circumstances under which a right to fees arises.

The characteristic of those statutes which provide for legal services at public expense, at least initially, is that the fees are to be paid directly to the attorney or the public defender. (Pen. Code, §§ 987.2, 1241; Welf. & Inst. Code, § 517; Civ. Code, § 237.5.)

In civil proceedings in which an award of counsel fees is provided for, such award is in the nature of costs, and is sometimes denominated as such. (See Code Civ. Proc., § 836; Code Civ. Proc., § 1255a.) Sometimes they are included within necessary expenses, such as are provided by the undertaking given by an attaching creditor. (Code Civ. Proc., § 539a; *Mart, Inc.* v. *National Auto. & Cas. Co.,* 250 Cal.App.2d 772 [58 Cal.Rptr. 877].)

In other situations there is provision for direct payment of fees to an attorney, but out of a fund which is sometimes the fund gained for the attorney's client as under Labor Code section 4903. (See also *Leach* v. *Pierce,* 93 Cal. 627 [29 P. 239]; Prob. Code, § 910.)

Under an Ohio statute that provided for direct payment by the county to an attorney appointed by the court to represent an indigent criminal defendant, an attorney so appointed was held entitled to have such fee paid to him, although he was working for a salary paid by the Legal Aid Society

under an agreement he would turn over the fee to the charitable agency responsible for the Legal Aid Society.[1] (*State* v. *Carney,* 172 Ohio St. 175 [15 Ohio Ops.2d 326, 174 N.E.2d 253].)

A chancery court in *Ferrigno* v. *Ferrigno,* 115 N.J.Super. 283 [279 A.2d 141], exercising its power in a divorce action to order payment for the services of the wife's attorney, was upheld in making an order for such payment to the Treasurer of the United States of America when the wife "was represented by an attorney affiliated with the Essex County Legal Services Corporation, a private, nonprofit corporation financed primarily by the Federal Government under the Economic Opportunity Act of 1964 (42 U.S.C. § 2701)."

The award of attorney fees provided by Welfare and Institutions Code section 10962 is not intended as a penalty against the state. While in the nature of costs, which are allowable only to the extent to which they are reasonably incurred, the attorney fees provided for are to permit a claimant to establish his right to a statutory benefit that by its character is obtainable only by a needy person whose financial condition does not leave a margin for such occasional necessities as attorney fees. Yet the preparation of a petition for writ of mandate and the proceedings incidental thereto are matters outside the field of ordinary experience among laymen.

For that reason we conclude the legislative intent does not bar an award of attorney fees to a successful claimant under Welfare and Institutions Code sections 13500 to 13701, where the claimant is represented by an attorney who, if acting in his private capacity, would be entitled to compensation, although in fact the attorney is the salaried employee of a corporation which furnishes his services without cost to the client, and the client has agreed to donate the amount awarded to that corporation.

We disapprove as a basis for an award of attorney fees in the circumstance a requirement prior to the rendition of services that such services, ostensibly to be furnished without obligation for payment, will be furnished only if the client should agree to apply for fees and pay them over to the corporation if he is successful in his claim.[2]

The judgment is affirmed.

---

[1]Arguments for and against an award of attorney fees to a party litigant who has been represented by a legal aid organization, and decisions in support of such arguments, may be found in 87 Harvard Law Review 411.

[2]Compare the question of an award of fees upon abandonment of a condemnation proceeding where the *only* fee arrangement was for a contingent fee, as discussed in *Merced Irrigation Dist.* v. *Woolstenhulme,* 4 Cal.3d 478, 505 [93 Cal.Rptr. 833, 483 P.2d 1], and the cases cited therein.

Trout shall recover his costs on appeal, including an attorney fee of $200 recoverable as costs.

Brown (Gerald), P. J., and Cologne, J., concurred.

The petition of the defendant and appellant for a hearing by the Supreme Court was denied May 1, 1974.