[Civ. No. 36121. First Dist., Div. Four. Oct. 30, 1975.]

CHRISTINA HYPOLITE, a Minor, etc., et al.,
Plaintiffs and Respondents, v.
ROBERT B. CARLESON, as Director, etc., Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, Craig Modlin and John Fourt, Deputy Attorneys General, for Defendant and Appellant.

Robert Chartoff, Christopher Hamilton, Ralph Santiago Abascal, Marjorie Gelb, David F. Chavkin, J. Kendrick Kresse, David J. Rapport and Clifford Sweet for Plaintiffs and Respondents.

**OPINION**

**RATTIGAN, Acting P. J.**—One of the two minor respondents commenced this action against appellant Robert Carleson, Director of the State Department of Social Welfare (hereinafter the "Director" and "Department," respectively), seeking declaratory and injunctive relief, and a peremptory writ of mandate, upon the grounds that the minor had been denied certain public assistance benefits upon the sole basis of a Department regulation which was invalid. After a nonjury trial of the issues joined upon a first amended complaint filed by all of the present respondents, the trial court sustained the regulation and entered a judgment denying respondents any of the relief sought in their first

amended complaint. Upon their appeal, Division One of this court held the regulation invalid for lack of conformity with federal statutes and upon constitutional grounds (*Hypolite* v. *Carleson* (1973) 32 Cal.App.3d 979, 982-987 [108 Cal.Rptr. 751]), reversed the judgment, and remanded the cause to the trial court with directions to grant a peremptory writ of mandate. (*Id.* at p. 987.)

In compliance with the remand, the trial court entered a judgment which ordered the issuance of a peremptory writ of mandate compelling the Director to set aside his previous administrative decisions which had been reached, adverse to the two minor respondents, upon the basis of the regulation. As the result of proceedings then initiated by respondents, the court entered (1) an "Order Certifying Class," which certifies the action to be a class action and identifies the class entitled to relief, and (2) an "Amended Judgment[,] After Reversal On Appeal[,] Granting Peremptory Writ Of Mandate." As amended, the judgment awards the benefits in question to the two minor respondents and other members of the class retroactively from the date the action was commenced, orders a procedure whereby the other members of the class are to be given notice of their entitlement to benefits and their claims therefor are to be processed, and further awards attorneys' fees to counsel for respondents.

On the present appeal, which the Director has taken from the amended judgment, he challenges the post-remand class-action certification in various respects, the retroactive award of benefits in all respects, and the award of attorneys' fees. The questions presented require that we retrace the foregoing summary in further detail, as follows:

Respondent Christina Hypolite, a minor acting through respondent Bertha Hypolite as her guardian, commenced the action on May 15, 1972, against the Director as an individual and in his official capacity. The other respondents joined her as plaintiffs in the aforementioned first amended complaint, which was filed in July 1972.[1] In that pleading, all of the respondents "sought to challenge the exclusion by defendants of certain children from participating in the Aid to Families With Dependent Children program (hereinafter 'AFDC') provided for in 42 United

---

[1]The respondents then appearing as plaintiffs included Christina Hypolite and Bertha Hypolite, her guardian; Michael Jensen, a minor appearing through Rollan Eller as his guardian; and California Welfare Rights Organization, an unincorporated association, appearing with and through Catherine Jermany, its president.

States Code sections 601-610, and Welfare and Institutions Code sections 11200-11488."[2]

Specifically, respondents challenged the validity of the Department's eligibility and assistance standards regulation 41-450.12 (hereinafter "the regulation," or "EAS § 41-450.12"). The regulation had been adopted by appellant pursuant to his authority, as Director of the Department, to formulate regulations in aid of administering AFDC. (§ 10553, subds. (b) and (d).) It was adopted by way of implementing section 11250, which, as pertinent to the present case, provided: "Aid, services, or both, shall be granted under the provisions of this chapter, and subject to the regulations of the department, to families with related children under the age of 18 years, except as provided in Section 11253, in need thereof because they have been deprived of parental support or care due to: . . . (b) The divorce, separation or desertion of a parent or parents and resultant *continued absence* of a parent from the home for these or other reasons. . . ." (Italics added.)

The context of the regulation (i.e., the full body of EAS § 41-450) defined the term "continued absence" as used in section 11250, subdivision (b). It provided that "continued absence" existed "when the natural parent is physically absent from the home" of a child and when "[b]oth parents are physically out of the home and their whereabouts are not known." The regulation itself, however (i.e., § EAS 41-450.12), provided to the contrary where the parents maintained a home together but apart from the child.[3]

Among several causes of action separately stated in their first amended complaint, respondents alleged the regulation and as follows: At pertinent times, each of the minor respondents (Christina Hypolite and Michael Jensen) resided in California with a grandparent-guardian (respondents Bertha Hypolite and Rollan Eller, respectively). The parents of each lived together elsewhere. Consequently, each minor had been denied AFDC benefits, on the basis of the regulation, by

---

[2]We here quote the factual recital in *Hypolite* v. *Carleson, supra*, 32 Cal.App.3d 979, the decision previously rendered herein by Division One of this court as recounted *ante*. Some of the facts which follow in our text are similarly extracted from that decision, with some necessary repetition but without specific citation; others have been added. Except where otherwise indicated, all statutory references herein are to the Welfare and Institutions Code.

[3]As pertinent, the regulation provided: ". . . 'Continued absence' does not exist: . . . [¶] .12 When both parents are maintaining a home together but the child lives elsewhere. It is immaterial whether the child lives with a relative. . . ."

administrative action taken by the Director. Each was eligible for the benefits except for the effect of the regulation. The grandparent-guardian of each had accordingly challenged the Director's administrative action by requesting "fair hearings" pursuant to section 10950 et seq. After a hearing in each case, the Director had reached a "fair hearing decision" adverse to each minor.[4]

Upon the basis of these and other allegations in their first amended complaint, and in the prayer thereof, respondents sought a declaratory judgment to the effect that the regulation was invalid; an injunction restraining the Director from enforcing it; a peremptory writ of mandate which, as prayed, would have required him to pay AFDC benefits, retroactively from June 17, 1968, "to plaintiffs and all members of their class"; and "reasonable attorney's fees" and costs.

In addition to the just-quoted reference to a "class" in its prayer, other passages of respondents' first amended complaint unmistakably indicated that they intended to maintain a class action.[5] Despite this fact, they undertook no pretrial proceedings addressed to its certification as such or to the composition of the alleged class. The Director did not challenge its propriety as a class action by demurrer or motion, nor did he raise such

[4]The administrative decision adverse to Christina Hypolite had been made prior to the filing of the first amended complaint in July, 1972, and was alleged therein as a fact. It was further alleged that a hearing had been held in Michael Jensen's case, but that a decision was pending, at that time. The record shows that the Director reached an administrative decision adverse to Michael Jensen on October 3, 1972.

[5]According to its caption, the present respondents (see fn. 1, *ante*) appeared as plaintiffs "on behalf of themselves and all others similarly situated." In a paragraph ("V") which was incorporated in each of their separately stated causes of action, they alleged as follows:
"CLASS ACTION. The named plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. Members of the class on whose behalf suit is brought herein are all children eligible for AFDC but for the fact that their parents cohabit at a place other than where the child resides. Members of the class are so numerous that joinder is impractical and individual litigation by each would necessarily and substantially burden the operation of the judicial system. There exist questions of law and fact common to all members of the class, all share a common right to relief, and a common interest in the case, which interest is typified by the interests of named plaintiffs herein and can be adequately and fairly represented and protected by the representative parties herein named, making appropriate final injunctive, mandatory and declaratory relief with respect to the class as a whole."
A similarly worded caption, and an identical paragraph, appeared in the complaint filed on behalf of respondent Christina Hypolite when the action was commenced on May 15, 1972. It was expressly alleged in both complaints, with appropriate supporting allegations in each, that a peremptory writ of mandate was sought pursuant to section 1094.5 of the Code of Civil Procedure.

challenge in his answer, which he filed in July 1972.[6] Consequently, the cause was tried (also in July 1972) without the trial court having considered its class-action features in any respect.

The court entered its original judgment in the Director's favor on August 2, 1972, denying all relief sought by respondents in their first amended complaint. The decision by Division One of this court, reversing the judgment and remanding the cause to the trial court with directions to grant a peremptory writ of mandate, was filed on June 18, 1973. (*Hypolite* v. *Carleson, supra,* 32 Cal.App.3d 979.) The Director's petition for a hearing by the California Supreme Court was denied on August 16, 1973. (*Id.* at p. 987.) His petition for a writ of certiorari was denied by the United States Supreme Court on February 19, 1974. (*Swoap, Director, Department of Social Welfare* v. *Hypolite et al.,* 415 U.S. 934 [39 L.Ed.2d 492, 94 S.Ct. 1449].)

On January 4, 1974,[7] having received the remittitur which had meanwhile issued from this court, the trial court entered a "Judgment[,] After Reversal On Appeal[,] Granting Peremptory Writ Of Mandate." This judgment vacated the one which had been reversed on appeal, enjoined the Director from enforcing the regulation, ordered the issuance of a peremptory writ of mandate directing him to set aside his administrative decisions adverse to respondents Christina Hypolite and Michael Jensen (see fn. 3, *ante*), and provided that the court retained "jurisdiction over the issues of petitioners'-plaintiffs' [i.e., the present respondents'] claim for retroactive class relief, costs and attorney's fees."

On March 28, respondents noticed a motion for amendment of the January 4 judgment to provide for the payment of (1) AFDC benefits for Christina Hypolite and Michael Jensen retroactively from May 15, 1972 (the date the action was originally commenced by Christina), and (2) attorneys' fees to or for both minors.

On May 8, respondents filed a "Notice Of Motion For Certification Of Class," supported by various documents in which they asserted, among other things, that "with the issue of class retroactivity still outstanding . . . the Court must first determine whether this is a certifiable class action."

---

[6]In his answer, in fact, the Director expressly *admitted* the allegations of paragraph V of the first amended complaint (quoted in fn. 5, *ante*).

[7]Except where otherwise indicated, all dates hereinafter mentioned in a factual context refer to the calendar year 1974.

On June 11, after a hearing, the trial court filed a memorandum decision (an "Opinion Memorandum," hereinafter quoted) in which it pronounced its determinations favorable to respondents on both motions. On June 14, and applying explicit provisions of the memorandum decision in both instances, the court filed an "Order Certifying Class" and an "Amended Judgment[,] After Reversal On Appeal[,] Granting Peremptory Writ of Mandate."

The pertinent text of the "Order Certifying Class" is quoted in the margin.[8] The amended judgment added paragraphs "5.," "6.," and "7." to the judgment entered on January 4. Paragraph 5 reads:

"5. The members of petitioners' class shall be entitled to the restoration of all those monies withheld pursuant to EAS § 41-450.12 from May 15, 1972, or the date of their terminations from, or applications for, assistance, if later; provided, however, that those members of the class who suffered adverse fair hearing decisions by virtue of EAS § 41-450.12 on or after May 15, 1972, shall be entitled to retroactive benefits to the same extent that said retroactive benefits would have been granted had those fair hearings been decided in claimants' favor."

Paragraph 6 of the amended judgment ordered the issuance of a peremptory writ of mandate and spelled out its provisions in lettered subparagraphs. Subparagraph (a) required the Director to identify "those individuals who suffered adverse fair hearing decisions by virtue of EAS § 41-450.12, as defined in Paragraph 5" (quoted *ante*), to mail them notice "that they may be entitled to retroactive benefits to the same extent that said retroactive benefits would have been granted had those fair hearings been decided in claimants' favor." Subparagraph (a) further provided that "individuals" who were reached by this notice, and "who wish to initiate claims for retroactive relief," were required to file claims with their county welfare departments within 90 days of the mailing of the notice, and that the notice should "so state."

Subparagraph (b) of paragraph 6 ordered the Director to have each county welfare department mail a similar notice to all current AFDC recipients, "informing . . . [them] . . . of their potential entitlement to

---

[8]"IT IS ORDERED, ADJUDGED AND DECREED that the above-entitled proceeding shall be and hereby is certified as a class action. The class to be represented shall consist of all those individuals who were rendered ineligible for AFDC by virtue of EAS § 41-450.12 solely because their parents maintained a home together elsewhere."

retroactive benefits in accordance with the terms of the Amended Judgment . . . ," granted a similar 90-day period within which "individuals who wish to initiate claims for retroactive relief" were required to file claims with their county welfare departments, and again provided that the notice "so state." Subparagraph (c) ordered the Director to cause such notices to be posted in county welfare departments and at "food stamp outlets," and provided that the 90-day claim period was to run from the "date of posting."[9]

Subparagraphs (d), (e) and (f) of paragraph 6 require the peremptory writ to include certain provisions for bilingual notices, claim forms, and the processing of claims filed with county welfare departments. In subparagraphs (g), (h), and (i), the court ordered provisions in the writ requiring the Director to pay attorneys' fees to respondents' counsel as hereinafter described.

Subparagraph (j) of paragraph 6 ordered the Director to file a return to the writ within 135 days. In paragraph 7 of the amended judgment, the court retained "jurisdiction over this proceeding until full compliance with the terms of the Amended Judgment . . . has been achieved."

A peremptory writ of mandate was accordingly issued on July 10, addressed to the Director and incorporating the substance of paragraphs 5, 6 and 7 of the amended judgment. The present appeal by the Director (hereinafter "appellant") is from the amended judgment only.[10] For the reasons next stated, we affirm it.

[9]The following observations are pertinent at this point: The "Order Certifying Class" includes in the designated class "*all* those individuals who were rendered ineligible for AFDC by virtue of EAS § 41-450.12. . . ." (See text at fn. 8, *ante* [italics added here].) Paragraph 5 of the amended judgment (quoted in the text *ante*) orders the retroactive payment of benefits to *all* "members of petitioners' class. . . ." Subparagraph (a) of paragraph 6 calls for notice to those members of the class who had "suffered adverse fair hearing decisions," but the notices required in subparagraphs (b) and (c) are obviously designed to reach others who may be entitled to retroactive relief. It is clear from these provisions that such relief is not limited to those members of the class who had exhausted their administrative remedies by requesting "fair hearings" pursuant to section 10950 et seq.

[10]After describing the "Order Certifying Class" and the amended. judgment in an introductory statement in his opening brief, appellant states that he "now appeals *these decisions.*" (Italics added.) The quoted assertion is not literally true: his notice of appeal explicitly states that he appeals from the "Amended Judgment . . . ," but does not mention the "Order Certifying Class." It nevertheless appears that the order is not appealable as such (see Code Civ. Proc., § 904.1), but that the amended judgment is appealable as a final judgment. (*Id.,* subd. (a).) We may therefore treat the former as an interlocutory order which is reviewable upon the appeal taken from the latter. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 7-8, pp. 3186-3187; 6 Witkin, *op. cit.,* Appeal, §§ 34 [pp. 4048-4049], 52 [pp. 4066-4067], 62 [p. 4077].)

## I. *The Post-Remand Certification as a Class Action*

Appellant challenges the "Order Certifying Class" (see fns. 8 and 10, *ante*) upon the grounds (1) that respondents "failed to present facts describing in detail the composition of the class"; (2) that they similarly failed to show a "well defined community of interest," among the members of the class designated in the order, for purposes of their entitlement to the retroactive benefits in question; and (3) that they were precluded from obtaining the order because they did not move for it until after the substantive issues in the action had been litigated to finality, but between appellant and the present respondents only, as previously described.

The validity of appellant's first two grounds are substantially diminished, if not defeated, by the fact—which the parties have apparently overlooked on the appeal—that in his answer he admitted the pertinent class-action allegations of respondents' first amended complaint. (See fns. 5 and 6, *ante*.) We nevertheless consider both arguments, for which the point of departure is *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]. In that case the Supreme Court definitively established the principles which control the maintenance of a class action pursuant to section 382 of the Code of Civil Procedure, stating: "That section provides in relevant part: '. . . and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.' The section is based. upon the equitable doctrine of virtual representation which ' "rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice." ' [Citations.] ■ [¶] Although the statute appears to speak in the alternative, it uniformly has been held that two requirements must be met in order to sustain any class action: (1) there must be an ascertainable class [citations]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented [citations]." (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695 at pp. 703-704.)

### (1) *There Is an "Ascertainable Class"*

■ The foregoing principles have been persistently reiterated and applied—in favor of a class action or otherwise—in subsequent decisions. (See, e.g., *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808-810 [94 Cal.Rptr. 796, 484 P.2d 964]; *La Sala* v. *American Sav. & Loan Assn.*

(1971) 5 Cal.3d 864, 875-877 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 236-239 [102 Cal.Rptr. 1, 497 P.2d 225]; *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 458-460 [115 Cal.Rptr. 797, 525 P.2d 701]; *Harrison* v. *Board of Supervisors* (1975) 44 Cal.App.3d 852, 861-862 [118 Cal.Rptr. 828].) The trial court applied them in the present case, citing them in its memorandum decision (the "Opinion Memorandum" filed on June 11) and stating: "Under such principles, it is clear that an order certifying the existence of a proper class is appropriate. . . . [T]here is an 'ascertainable class,' it being undisputed that those fair hearing decisions at which individuals were wrongfully denied benefits have, since January 1972 been 'coded' so that persons denied benefits *pursuant to a specific regulation* are readily ascertainable. Records do exist, and use of these records would involve neither unreasonable time nor expense."[11] (Italics added.)

The last two sentences just quoted, which are supported by the record, dispose of appellant's contention to the effect that respondents failed to show an "ascertainable class." He argues that they should have been required to show such facts as the approximate number of persons in the class, their geographical locations, and an array of related details. As authority for this argument, he cites Los Angeles County Superior Court rules which require that an explicit catalog of such details be shown in pretrial proceedings in that court "in every class action to determine class issues." (See rule 401 et seq. ["Manual For Conduct Of Pretrial Proceedings In Class Actions"], Rules of the Superior Court for Los Angeles County. The catalog of details required to be shown appears in rule 427.)

As appellant concedes, the local rules cited are not binding upon any court other than the one which promulgated them. (See 1 Witkin, Cal. Procedure, Courts, §§ 128-129, pp. 398-400.) He nevertheless contends, in effect, that the present trial court should have applied them because the Supreme Court "has urged trial courts to be procedurally innovative, encouraging them to incorporate procedures from outside sources in determining whether to allow the maintenance of a particular class suit." (See *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at p. 453. Cf. *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800 at p. 821.) It appears, however, that the members of the class designated in the present case

---

[11]We have resorted to the memorandum decision here quoted, as we may do, " 'for the purpose of discovering the process by which . . . [the trial judge] . . . arrived at his conclusion.' [Citations.]" (*Niles Sand & Gravel Co.* v. *Alameda County Water Dist.* (1974) 37 Cal.App.3d 924, 933 [fn. 10] [112 Cal.Rptr. 846].)

may readily be identified, or their claims substantiated (or both), by reference to the Department's records which "do exist" (see the text at fn. 11, *ante*), that the two functions will involve "neither unreasonable time nor expense" *(ibid.)*, and that their performance presents a "relatively uncomplicated problem." (Cf. *Collins* v. *Rocha, supra,* 7 Cal.3d 232 at p. 238.)

Consequently, and while neither the usefulness of the Los Angeles County Superior Court rules nor the validity of the Supreme Court's admonition is subject to question, the details required by the former were not necessary here because of the accessibility and content of the Department's pertinent records. For the same reason, it further appears that the trial court correctly determined that an "ascertainable class" existed.

(2) *There Is a "Well Defined Community of Interest" Within the Designated Class*

■ Appellant concedes that the members of the designated class share a "common question of law" (see *Daar* v. *Yellow Cab. Co., supra,* 67 Cal.2d 695 at p. 704) with respect to the validity of EAS section 41-450.12 as such, but he contends that they do not have the requisite "well defined community of interest," for purposes of maintaining a class action, because they do not share a "common question of fact." (See *ibid.*)

This argument rests upon a premise which appellant states in this language: "[T]he many factors which influence an individual's eligibility will have to be evaluated in each case in order to determine the propriety of retroactive aid. Many of the individuals who were either denied [AFDC] benefits or had benefits terminated on the basis of the subject regulation may also have been ineligible for a myriad of other factors. In other words, while the invalidity of the regulation may be a fact common to all, the right to retroactive aid 'can be established only after extensive examination of the circumstances surrounding each party.' " (Appellant here quotes and relies upon *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at p. 461.)

It must follow, according to the argument, that the affected individuals cannot be represented in a class action because such action may not be maintained, for lack of the requisite "community of interest" in point of fact, where the right of each to recover is "based on a separate set of facts

applicable only to him." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800 at p. 809 [text at fn. 5]. See *Collins* v. *Rocha, supra,* 7 Cal.3d 232 at pp. 237-238; *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at pp. 459-460 [quoting *Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 912 (69 Cal.Rptr. 612, 442 P.2d 692)].)

The argument fails because the premise does. According to the "Order Certifying Class," the designated class consists only of "those individuals who were rendered ineligible for AFDC *by virtue of EAS § 41-450.12 solely because their parents maintained a home together elsewhere.*" (See fn. 8, *ante* [italics added here].) Paragraph 5 of the amended judgment orders that members of the class shall be paid "all those monies withheld *pursuant to EAS § 41-450.12* from May 15, 1972. . . ." (See fn. 9, *ante* [italics again added].)

It is therefore clear that but *one* essential fact is to be pursued by appellant with respect to each class member who claims retroactive AFDC benefits pursuant to the amended judgment: i.e., whether he or she had been denied benefits *solely* "by virtue of EAS § 41-450.12" or, as stated in the "Order Certifying Class," "by virtue of EAS § 41-450.12 solely because . . . [his or her] . . . parents maintained a home together elsewhere."

Each claimant's entitlement to benefits *as such* depends upon the existence of this single fact, not upon "a separate set of facts applicable only to him." Because all members of the class have the single fact in common, they share the element—requisite to a class action—of a "well defined community of interest in the questions of . . . fact involved affecting the parties to be represented." (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695 at p. 704.)

The *amount* due an individual claimant may vary, depending upon the date of denial or termination in his case and the conceivable event that subsequently changed circumstances interrupted his eligibility for reasons not involving his parents' domestic situation and EAS section 41-450.12. Although some investigation of these matters will be necessary, they are associated with the requirement that each class member must prove his individual claim. This requirement, exacted of each, does not negate factual "community of interest" so as to preclude a class action on behalf of all. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800 at p. 815; *Collins* v. *Rocha, supra,* 7 Cal.3d 232 at p. 238.)

Such "community of interest" having been shown, the "Order Certifying Class" and the amended judgment were correct in this respect. The contrary conclusion reached in the decision upon which appellant principally relies (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447) was based upon wholly distinguishable facts. (See *id.* at pp. 452-453, 458-463.)

### (3) *The Timing of the Class-Action Certification*

■ Appellant's contentions in this regard are directed to the unusual circumstance that no procedural steps were taken to establish the propriety of a class action—or to the contrary effect—until after the substantive issue of the regulation's validity had been adjudicated to finality, as between the present parties, in the previous decision on appeal. (*Hypolite* v. *Carleson, supra,* 32 Cal.App.3d 979.)

There being no statutory requirement that such steps be taken before the trial of an action of this nature commenced as a class action in a California court,[12] appellant invokes (1) the Supreme Court's suggestion that trial courts resort to rule 23 of the Federal Rules of Civil Procedure for the purpose of determining whether a suit commenced as a class action should be permitted to proceed as one (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800 at p. 821; *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at p. 463), and (2) the provision of rule 23 that such determination is to be made "[a]s soon as practicable" after the action has been commenced. (Fed. Rules Civ. Proc., rule 23 (c)(1).)[13]

Although the timing provision of the federal rule ("[a]s soon as practicable") does not explicitly require a *pretrial* motion for such determination in a suit commenced as a class action, federal decisions establish that failure of either party to make such motion requires dismissal of the class aspects of the action (*Glodgett* v. *Betit* (1973) 368

---

[12] The California Rules of Court are similarly silent on this subject. (Compare rule 401 et seq., Rules of the Superior Court for Los Angeles County, discussed in the text *ante.*) In contrast, it appears that a class action brought under the Consumers Legal Remedies Act (Civ. Code, div. 3, pt. 4, tit. 1.5 [commencing with § 1750]) must be determined before the action may proceed to trial. (See *id.,* § 1781; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800 at p. 817.) That act, however, provides a remedy for specific wrongs which, as defined in it, do not include the denial of public assistance benefits involved in the present action. (See Civ. Code, § 1770.) Accordingly, the act's procedural requirements are not applicable here.

[13] "23. . . . (c) . . . (1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. . . ."

F.Supp. 211, 214-215), or that the trial court must make the necessary determination on its own motion (*Weisman* v. *M C A Inc.* (1968) 45 F.R.D. 258, 260 [fn. 1]), before the action may proceed as a class action. (See, generally, 7A Wright & Miller, Federal Practice and Procedure (1972) § 1785, p. 128 et seq.)

While we are not bound by the federal decisions (as we are not bound by rule 23, despite its usefulness in our trial courts as mentioned *ante*), we must acknowledge the many sound reasons that a class action should ordinarily not be permitted to proceed to trial without a judicial determination that it properly be maintained as such. In the typical case, a pretrial determination is necessary for the purpose of resolving such questions as whether there is in fact an "ascertainable class" among a presently unknown number of persons who may be entitled to relief (see, e.g., *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695 at pp. 701-703, 706), what means of notifying them of its pendency should be employed so that they may accept or disclaim participation (see *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800 at pp. 820-821), and the overriding question whether its maintenance as a class action will be "advantageous to the judicial process and to the litigants." (*Collins* v. *Rocha, supra,* 7 Cal.3d 232 at p. 238; cf. *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at p. 459.)

We must also acknowledge, however, that this is not a typical case. As we have seen, "[r]ecords do exist" from which some members of the class entitled to retroactive benefits may be identified (from those records which are "coded") and the claims of all of them may be substantiated. It reasonably appears that the class-action issues of the case were as readily resolved after trial, appeal, reversal and remand as before; it seems obvious, in fact, that a pretrial motion for their resolution should have produced substantially the same "Order Certifying Class" as was entered after those events.

Because class actions are themselves devices of courts of equity, codified in section 382 of the Code of Civil Procedure to promote the interests of justice (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at p. 458), the equities of this situation are also to be considered. The proposed class-action issues of the litigation were squarely tendered in both the original complaint filed on May 15, 1972, and the first amended complaint upon which the substantive issues were joined and tried. (See text at fn. 5, *ante.*) Appellant could have challenged its propriety as a class action by demurrer (see *Vasquez* v. *Superior Court, supra,* 4 Cal.3d

800 at pp. 805-806; *Collins* v. *Rocha, supra,* 7 Cal.3d 232 at pp. 234-236) or by motion. (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at pp. 453-454.) He took neither step, and in fact admitted respondents' pertinent class-action allegations in his answer. (See fns. 5 and 6, *ante.*) The Department has not been prejudiced in any respect by the late class-action determination. Under these circumstances, appellant may not be heard to complain of its timing on the present appeal.

The rule should be—and still is—that the class issues tendered in a complaint filed as a class action should ordinarily be resolved before the cause is tried on its merits. We do not hold to the contrary; we hold only that the post-remand resolution of these issues in the present case, under its exceptional circumstances, does not warrant reversal.

## II. *The Award of Retroactive Benefits to the Class*

■ Appellant claims error in the trial court's award of *retroactive* AFDC benefits to members of the designated class, and its selection of May 15, 1972, as the terminal point of their eligibility for retroactive relief.

The trial court indicated in its memorandum decision (see fn. 11, *ante*) that retroactive payment of benefits would be ordered upon the authority of *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 81 [162 P.2d 630]. That decision established that a person who had been wrongfully denied public assistance benefits was entitled to "the full payment thereof," from the date he was "*first entitled* to receive the aid," upon the theory that "[t]he obligation to pay became a *debt* due" to him as of that date. (*Id.* at pp. 85-86 [italics added].) To hold otherwise, the court said, would "provide a money-saving device for the [debtor] counties at the expense of those of our citizenry least able to bear the burden thereof." (*Id.* at p. 86.)

The courts of this state have consistently applied the "debt" theory conceived in the *Board of Social Welfare* decision, and the entitlement to retroactive payment of public assistance benefits which follows from it. (*Mooney* v. *Pickett* (1972) 26 Cal.App.3d 431, 435-437 [102 Cal.Rptr. 708]; *Leach* v. *Swoap* (1973) 35 Cal.App.3d 685, 689 [110 Cal.Rptr. 62]. See *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192, 203 [113 Cal.Rptr. 206, 520 P.2d 1022].) Appellant nevertheless contends that neither principle may be applied, in a class action, in favor of class members who have not exhausted their administrative (see fn. 9, *ante*) and judicial remedies.

No authority is cited for this argument. The contrary appears from decisions in which retroactive payment of wrongfully withheld public assistance benefits to a class has been ordered without a suggestion that a class member's prior exhaustion of remedies was a prerequisite to retroactive relief. (See *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 749-750 [97 Cal.Rptr. 385, 488 P.2d 953]; *Villa* v. *Hall* (1971) 6 Cal.3d 227, 231, 237 [98 Cal.Rptr. 460, 490 P.2d 1148] [vacated and remanded, upon other grounds, *sub nom. Hall* v. *Villa* (1972) 406 U.S. 965 (32 L.Ed.2d 664, 92 S.Ct. 2407); see subsequent decision, *Villa* v. *Hall* (1972) 7 Cal.3d 926 (103 Cal.Rptr. 863, 500 P.2d 887)]; *Luna* v. *Carleson* (1975) 45 Cal.App.3d 670, 673 [119 Cal.Rptr. 711].)

Limitation of retroactive relief to class members who have exhausted their administrative remedies would contradict the *Board of Social Welfare* holding that each is owed a "debt" from the date he was "first entitled to receive the aid" (*Bd. of Soc. Welfare* v. *County of L. A., supra,* 27 Cal.2d 81 at p. 86); the "debt" accrues on that date, not if and when he subsequently exhausts an administrative remedy. Similar limitation of retroactive relief to class members who have exhausted *judicial* remedies would contradict *Board of Social Welfare* for the same reason; it would also render a class action, which we have held to be proper in the present case, both unnecessary and meaningless.

Retroactive payment of public assistance benefits has been denied in some pertinent federal decisions (e.g., *Rothstein* v. *Wyman* (2d Cir. 1972) 467 F.2d 226) and sustained in others. (E.g., *Alvarado* v. *Schmidt* (W.D. Wis. 1970) 317 F.Supp. 1027, 1042 and cases there cited. See also *Rothstein* v. *Wyman, supra,* at pp. 239-241.) In the *Rothstein* case, upon which appellant principally relies, retroactive payments were denied for policy reasons based upon " 'the principles of equity, comity, and federalism' which, as the [United States] Supreme Court has . . . said in another federal-state context, 'must restrain a federal court . . .' [Citation.]" (*Rothstein* v. *Wyman, supra,* at p. 236.) The *Rothstein* court further held that, because the action before it was "in truth a suit against the State of New York to which it has never consented" (*id.* at p. 236), the Eleventh Amendment of the United States Constitution precluded a federal court from ordering retroactive payment of benefits from state funds. (*Id.* at pp. 236-242.)

The principles of "equity, comity, and federalism" held to be controlling in *Rothstein* derive from the "federal-state context" of dual sovereignty established by the United States Constitution. While they

"restrain" a *federal* court in that context, they do not inhibit a California court in the present case; nor does the Eleventh Amendment have any application. On the strength of the California authorities previously cited, we therefore conclude that the trial court correctly ordered the retroactive payment of AFDC benefits. (*Bd. of Soc. Welfare* v. *County of L. A., supra,* 27 Cal.2d 81 at pp. 85-86; *Mooney* v. *Pickett, supra,* 26 Cal.App.3d 431 at pp. 435-437; *Leach* v. *Swoap, supra,* 35 Cal.App.3d 685, 689.)

Appellant further contends that, if retroactive relief is to be granted, the terminal date of eligibility therefor should be January 4, 1974 (the date the trial court entered its initial judgment upon remand), rather than May 15, 1972 (the date the action was commenced). According to the "debt" theory which the trial court correctly applied in principle, any individual claimant's eligibility for retroactive relief could be held to have commenced on the actual date when he was "first entitled to receive the aid." (*Bd. of Soc. Welfare* v. *County of L. A., supra,* 27 Cal.2d 81 at p. 86.) On the other hand, a practical application of the theory to a class of claimants requires that retroactive relief be granted back to a single date which has some relevance and which is feasible, in practical fact, when applied to the class under the realities of the situation.

In light of these opposing considerations, there is no particular magic in either date under discussion (Jan. 4, 1974, or May 15, 1972). As set forth in its memorandum decision (see fn. 11, *ante*), the trial court's statement of its reasons for selecting May 15, 1972,[14] are supported by the record in point of fact. They demonstrate that the court properly acknowledged the realities and exercised its discretion as a court of equity (see *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447 at p. 458) in designating that date: no error appears.

[14]After citing and applying the "debt" theory of *Bd. of Soc. Welfare* v. *County of L. A., supra,* 27 Cal.2d 81 at p. 86, the court stated:

". . . [T]he retroactive relief ordered by this court extends back in time no earlier than May 15, 1972, the date upon which petitioners initially filed the present action. [¶] Such order is made with knowledge of *Board of Social Welfare* and its progeny, which speak of retroactivity as reaching back to the time at which benefits are wrongfully denied.

"Such far-reaching retroactivity is in the present action out of the question. We deal with a regulation which has been in effect more than 20 years. [¶] It appears unrealistic and unreasonable to burden the state, or anyone else, with the cost of notifying all members of such a vast and scattered group, much less paying out more than twenty years of wrongfully withheld benefits. The cost in time and dollars is simply prohibitive. In addition, there is a point beyond which injury to those wrongfully denied benefits is, in its effect, de minimis, and beyond this point the court will not venture.

"Moreover, as above indicated, there is no way of knowing precisely who was denied

### III. *The Awards of Attorneys' Fees*

The amended judgment orders that the peremptory writ of mandate require appellant to pay specified attorneys' fees to each of the three entities who have acted as counsel for respondents. The writ provides accordingly.[15] Appellant contends (1) that this action is not within the ambit of the statute which authorizes an award of attorneys' fees in the litigation of public assistance benefits (§ 10962),[16] and (2) that the amounts awarded are excessive in respects involving the fact—which is undisputed—that each payee is a publicly funded legal services organization.

#### (1) *The Awards as Such*

■ Appellant points out that section 10962 permits an award of attorneys' fees only in an action brought for relief in administrative mandamus "under the provisions of section 1094.5 of the Code of Civil Procedure" (see § 10962 as quoted in fn. 16, *ante*); that section 1094.5 provides for review of an administrative decision reached after a hearing conducted in the pursuit of an administrative remedy (see *Gong* v. *City of Fremont* (1967) 250 Cal.App.2d 568, 572 [58 Cal.Rptr. 664]); and that the class-action consequences of the amended judgment extend relief to

---

benefits *solely because of* the regulation in question prior to January 1, 1972. The available records apparently do not contain such information. Therefore, the date upon which the action was filed presents itself as the logical cut-off point, and it is ordered that those denied benefits *pursuant to EAS 41-450.12,* and *subsequent to May 15, 1972* are entitled to and shall receive retroactive relief." (Italics in the original.)

[15]Pursuant to subparagraphs (g), (h) and (i) of paragraph 6 of the amended judgment, the writ orders the payment of $9,600 to the Legal Aid Society of Alameda County: $8,150 to the San Francisco Neighborhood Legal Assistance Foundation: and $675 to Stanislaus County Legal Assistance, Inc. The entity first named appeared as attorney of record on the complaint initially filed on May 15, 1972. All three entities have appeared of record, as respondents' counsel, since the filing of the first amended complaint on July 10, 1972.

[16]In its memorandum decision (see fn. 11, *ante*), the trial court indicated that the attorneys'-fee awards were made upon the authority of section 10962 and *Trout* v. *Carleson* (1974) 37 Cal.App.3d 337 [112 Cal.Rptr. 282]. Section 10962 provides in pertinent part: "The applicant or recipient [of public assistance benefits] or the affected county, within one year after receiving notice of the director's final decision, may file a petition with the superior court, *under the provisions of section 1094.5 of the Code of Civil Procedure,* praying for a review of the entire proceedings in the matter, upon questions of law involved in the case. Such review, if granted, shall be the exclusive remedy available to the applicant or recipient or county for review of the director's decision. . . . *The applicant or recipient shall be entitled to reasonable attorney's fees and costs, if he obtains a decision in his favor."* (Italics added.)

Appellant does not complain of the fact that the attorneys' fees in the present case were ordered paid directly to the attorneys involved.

some members of the affected class who had *not* pursued such remedy. (See fn. 9, *ante.*) It must follow, appellant argues, that section 10962 does not authorize an award of attorneys' fees in this case because Code of Civil Procedure section 1094.5 was not invoked as to those members.

As is clear from the complaint and the first amended complaint, however, Code of Civil Procedure section 1094.5 *was* invoked in the action by the two minor respondents (Christina Hypolite and Michael Jensen) on whose behalf it was initially brought, and both of them sought relief in administrative mandamus after having pursued the administrative "fair hearing" remedies made available to them by section 10950 et seq. (See the text at fn. 4 and the last sentence of fn. 5, *ante.*) The attorneys' fees were awarded to *their* counsel, and *they* had sued "under the provisions of section 1094.5 of the Code of Civil Procedure" as mentioned in section 10962. (See fn. 16, *ante.*)

The awards were therefore proper as to these two respondents upon the authority of section 10962, irrespective of the fact that the result they achieved was in favor of some others who were similarly entitled to retroactive AFDC benefits but who had not followed the same administrative course. An individual who is entitled to attorneys' fees under section 10962 may not be held to have forfeited them because he has successfully represented a class as well as his own interests.

### (2) *The Amounts Awarded*

The trial court stated in its memorandum decision that the amounts awarded had been "calculated at the rate of $50 per hour," which it explicitly found to be "within the lower range of prevailing compensation awarded by Superior Courts in this geographical area for similar services." The court further stated that "[t]his rate also reflects the court's finding that a fee awarded to attorneys of the class here involved should not include any substantial portion representing net profit to the individual attorney, but, on the contrary, should reasonably reimburse the agency for the cost of attorneys' services, including salary."

These determinations are substantially supported by declarations filed by several of respondents' various individual attorneys, to which appellant presented no opposing evidence. He nevertheless challenges the amounts awarded upon the stated grounds (among others) that, each of the recipients being a publicly financed legal services organization, the awards should not be made at rates which reflect the value of services

rendered by private attorneys; and that the amounts awarded were not based upon a "correct cost accounting" which was required in order to insure that none of the publicly financed recipients would realize a "profit."

It is settled that attorneys' fees *may* be awarded to publicly financed legal services organizations pursuant to section 10962, and that the amount thereof rests within the trial court's traditionally broad discretion in fixing such fees when they are properly awarded. (*Trout* v. *Carleson, supra,* 37 Cal.App.3d 337 at pp. 339-341; *Horn* v. *Swoap* (1974) 41 Cal.App.3d 375, 383-384 [116 Cal.Rptr. 113]; *Luna* v. *Carleson, supra,* 45 Cal.App.3d 670 at p. 673.)

Appellant's first argument is substantially met by the trial court's determination that the rate at which it calculated the amounts awarded ("$50 per hour") was "within *the lower range* of prevailing compensation awarded by Superior Courts in this geographical area for similar services." (Italics added.)

The "correct cost accounting" argument is based upon dictum in the *Trout* decision, where the court discussed such "accounting" as a hypothetical factor in cases involving the award of attorneys' fees to publicly financed legal services agencies under section 10962. (*Trout* v. *Carleson, supra,* 37 Cal.App.3d 337 at p. 341.) We do not find in the *Trout* language any requirement that the hypothetical "accounting" must be shown to a court by such agency when it requests attorneys' fees. The "accounting" argument, in any event, is substantially met by the trial court's finding to the effect that the amount awarded each agency did not represent "net profit" to it in excess of the actual cost of its services.

In their full context, appellant's arguments against the amounts awarded are to the general effect that a trial court's usual broad discretion in fixing permissible attorneys' fees is somehow abridged, where the fees are to be awarded to any publicly supported legal services agency, in the absence of a legislative declaration to the contrary. No authority is cited for the thrust of the arguments, and our conclusion is diametrically opposed: i.e., where such agency is an applicant for fees, a trial court's historically broad discretion in fixing them (see *Trout* v. *Carleson, supra,* 37 Cal.App.3d 337 at p. 341) is not limited in the absence of an explicit enactment which so states. No abuse of that discretion appears in the present case.

Respondents have requested an award of attorneys' fees on appeal, to which they are entitled pursuant to section 10962. (*Roberts* v. *Brian* (1973) 30 Cal.App.3d 427, 429-431 [106 Cal.Rptr. 360]; *Horn* v. *Swoap, supra,* 41 Cal.App.3d 375 at p. 384.) We have concluded that the reasonable value of their attorneys' services on the appeal should be fixed and awarded by the trial court when it determines costs on appeal. *(Horn* v. *Swoap, supra.)*

The "Amended Judgment After Reversal On Appeal Granting Peremptory Writ Of Mandate" is affirmed. The trial court is authorized and directed to hear an application by respondents for attorneys' fees, for services rendered on this appeal, and to fix and allow the reasonable value thereof.

Christian, J., and Emerson, J.,* concurred.

A petition for a rehearing was denied November 26, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.