[Civ. No. 18525. Third Dist. June 3, 1980.]

STEPHANIE LOWRY et al., Plaintiffs and Appellants, v.
MARIO OBLEDO, as Secretary, etc., et al.,
Defendants and Appellants.

COUNSEL

Diane Morrison, Roberta Ranstrom and Barbara Steinhardt for Plaintiffs and Appellants.

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, and Elisabeth C. Brandt, Deputy Attorney General, for Defendants and Appellants.

OPINION

**REGAN, Acting P. J.**—This case is a class action against the Secretary of the State Health and Welfare Agency and the Director of the Department of Benefit Payments seeking to have a state regulation concerning the aid to families with dependant children (AFDC) program declared invalid and to have class members' AFDC benefits recalculated. Plaintiffs challenge as contrary to federal law a state regulation disallowing as reasonable work-related expenses those child care expenses paid to nonworking members of the AFDC applicant's household. The court below declared the regulation to be contrary to both state and federal law. The court granted two named plaintiffs peremptory writs of mandate ordering defendants to recalculate their grants. However, the court refused to grant a writ of mandate for the class as a whole.

Three issues are raised on appeal, one by plaintiffs (as appellants) and two by defendants (as cross-appellants). Defendants contend that the court below erred in its interpretation of federal law and therefore should not have granted judgment for plaintiffs on the merits. Defendants contend that they were denied due process by the lower court's failure to certify the class and order notice to its members prior to consideration of the merits of the case. Finally, plaintiffs urge that the trial court abused its discretion in limiting the class to present AFDC recipients and refusing to order a peremptory writ of mandate for the class compelling defendants to recalculate class members' past awards.

The class action was brought by three named plaintiffs: Stephanie Lowry, Marilyn Hoover and Rita Trejo.

Stephanie Lowry became employed in February 1977. From February through May she paid her mother $1 an hour to provide child care for her son. In May she moved into her mother's house. In July the County of Sacramento completed an evaluation of this child care arrangement certifying it as adequate but disallowing the expenses as contrary to the state regulation in question inasmuch as Lowry's mother had become a nonworking member of Lowry's household. Had Lowry not moved into her mother's home, the expenses paid her mother for child care would have continued to be treated as reasonable work expenses, and deductible from income. At the fair hearing Lowry's mother testified that she had given up her nonpaying missionary work to care for her grandson and that she could not care for the child without payment for her services. Lowry testified that she first asked her mother to care for the child because the child had been physically abused by the previous sitter.

Marilyn Hoover became employed June 1, 1977, at which time she lived with her two aunts. One aunt worked. Hoover paid the other aunt for child care services provided to Hoover's child for June and July. The county evaluated this child care plan and disallowed the expenses because Hoover's aunt was a nonworking member of her household. The administrative record shows that the aunt also provided child care services for her stepbrother's children but does not reflect whether she was compensated for this service. Hoover testified at her fair hearing that she worked from 3:45 p.m. to 12:15 a.m. and was unable to make alternative child care arrangements. She also testified that her aunt charged her $4 per day and that this was the least expensive rate she could find.

In June 1977, Rita Trejo began working in a temporary job scheduled to end August 31, 1977. During this period she lived with her mother and seven siblings. She paid her 16-year-old nonworking sister $270 to care for her two children for July. In August the county evaluated the child care arrangement and refused to allow the expenses for that month because the child-care provider was a nonworking member of the recipient's household. The county also concluded that the $270 paid impermissively exceeded the community rate for two children of $180. Trejo did not appear at her fair hearing and therefore was not granted relief at trial.

Plaintiffs originally challenged both state Welfare and Institutions Code section 11451.6 and Manual of Policy and Procedures (MPP) section 44.113.241(b) as contrary to federal law. Plaintiffs contended that the federal law requires that the only limitation placed on allowable work expenses be that of reasonableness. The trial court found instead that the regulation was contrary to both state and federal law inasmuch as the regulation did not allow for individualized determinations of the reasonableness of the child care expenses. The federal statute, 42 United States Code section 602(a)(7), requires that states participating in the AFDC program deduct from an applicant's income those expenses "reasonably attributable to the earning of...income" for purposes of measuring the applicant's income in order to determine both eligibility for the program and the size of the applicant's grant. Welfare and Institutions Code section 11451.6 enacts this requirement as state law, providing for "exemptions from earned income for work-related expenses...[including] reasonable *and necessary* costs for child care .... For purposes of this section, reasonable and necessary costs of child care are defined as actual costs, not to exceed the costs of securing child care available in the community which meets the minimum standards ...." (Italics added.)

MPP section 44-113.241(b) reads in pertinent part, "The reasonable and necessary cost of obtaining such care shall be allowed when the county determines that adequate care for the recipient's children cannot be provided during his/her working hours by nonworking persons in his/her household. However, the amount allowed shall not exceed the cost of securing such child care through a child care facility meeting the standards outlined in Chapter 30-350...when the county determines that such a facility is available to the recipient." It is not disputed on appeal that the AFDC program will allow as reasonable work-related expenses child care expenses paid to nonhousehold members when a nonworking member of the recipient's household refuses to provide such care.

Plaintiffs also sought peremptory writs of mandate for themselves and their class pursuant to Welfare and Institutions Code section 10962 and Code of Civil Procedure section 1094.5. Section 10962 provides that any individual dissatisfied with the outcome of administrative hearings procedures may file a petition with the superior court pursuant to Code of Civil Procedure section 1094.5. The latter section provides for the administrative writ of mandamus.

Plaintiffs sought to define the class for purposes of both declaratory relief and the peremptory writs of mandate as those AFDC recipients "who have been refused a work expense deduction for child care costs paid to non-working household members since February 1, 1977 or who have been refused approval of a child care plan to employ a non-working household member as a babysitter since February 1, 1977."

Plaintiffs simultaneously moved for summary judgment on the declaratory relief and for certification that the class was proper. Defendants then moved for partial summary judgment with respect to the peremptory writs of mandate. Defendants also objected to consideration of the merits of the case prior to certification of the class and notice to its members. Notwithstanding defendant's objection, the trial court simultaneously certified the class and ruled on the merits.

The court certified the class for purposes of declaratory relief only, defining it as 200 persons "who are currently recipients of Aid to Families with Dependent Children (AFDC), are currently employed, and are not allowed, as a deduction from earnings countable in computation of their AFDC benefits, costs which they actually incurred by paying non-working members of their respective households for child care during working hours, where such disallowance is based solely upon the provisions of MPP section 44-113.241(b)." MPP section 44-113.241(b) was declared invalid insofar as it failed to provide for individualized determinations of whether the incurred cost of child care was reasonable. The court granted peremptory writs of mandate ordering defendant to set aside the fair hearing determinations of plaintiffs Lowry and Hoover. The court did not certify the class for purposes of the cause of action seeking a peremptory writ of mandate for the class members and no such writ was ordered.

I

■ Defendants contend that the trial court erred in holding that MPP section 44-113.241(b) is violative of Welfare and Institutions Code section 11451.6 and 42 United States Code section 602(a)(7). We do not agree.

The effect of MPP section 44-113.241(b) is to place an *absolute* bar against allowing as work-related expenditures deductible from an applicant's income those child care expenses paid to a member of the applicant's household. However, the United States Supreme Court has

interpreted 42 United States Code section 602(a)(7) as "a congressional directive that no limitation, apart from that of *reasonableness*, may be placed upon the recognition of expenses attributable to the earning of income." (*Shea* v. *Vialpando* (1974) 416 U.S. 251, 260 [40 L.Ed.2d 120, 129, 94 S.Ct. 1746]. Italics added.) The court concluded that the requirement of recognizing *all* reasonable expenditures was based upon congressional concern that a contrary policy would discourage applicants from seeking and retaining employment. Defendants' refusal to allow as work-related expenditures those child-care expenses reasonably paid to members of a recipient's household can only serve to discourage some parents from seeking or retaining employment because alternative child care arrangements are unavailable to them or inadequate to their child's needs.

In *Shea* the court struck down a state regulation providing an absolute uniform allowance for certain employment expenses. Defendants attempt to distinguish *Shea* by arguing that the regulation in question does not bar reasonable child care expenses so long as the care is provided by someone other than a member of the recipient's household. *Shea* cannot be so easily distinguished; "as to reasonable expenses attributable to the earning of income, Congress has spoken with firmness and clarity." (*Shea* v. *Vialpando, supra*, 416 U.S. at p. 266 [40 L.Ed.2d at p. 133].)

Defendants assert that to strike the regulation at issue will leave the state defenseless against fraud and collusion between the applicant and members of the applicant's household. This argument is overstated. The record reflects that the county visits each child care provider to certify the services as adequate. Such procedures do not leave the state defenseless against fraud and collusion; to the contrary, they are some protection against this ever-present possibility. Moreover, there is nothing in *Shea* to prohibit defendant from establishing a presumption of unreasonableness where a child care provider is a member of the applicant's household. Instead, *Shea* prohibits only an absolute limitation upon the recognition of work-related expenditures. (*Shea* v. *Vialpando, supra*, 416 U.S. at p. 265 [40 L.Ed.2d at p. 132.)

## II

Second, defendants contend that its due process rights were infringed upon by the trial court's failure to certify the class and require

notice to its members prior to reaching the merits of the case. Defendants have failed to show prejudice resulting from this procedure.

Defendants principally rely on *Home Sav. & Loan Ass. v. Superior Court* (1974) 42 Cal.App.3d 1006 [117 Cal.Rptr. 485], and *Home Sav. & Loan Assn. v. Superior Court* (1976) 54 Cal.App.3d 208 [126 Cal. Rptr. 511]. These cases hold that a defendant against whom a class action is brought has a due process right to obtain class certification and notice to class members before determination of the merits of the action. This rule attempts to prevent "one-way intervention" by which members of the class may join in the action if the outcome is favorable to their interests but avoid the binding effect of an unfavorable judgment because of their lack of notice.

The California Supreme Court has expressly declined to indorse the *Home* cases and has found their reasoning inapplicable in two instances. In *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, [141 Cal.Rptr. 20, 569 P.2d 125], the court held that notice to class members was not required in a class action brought by the Attorney General alleging fraud in the sale of lands and seeking an injunction, restitution and civil penalties. The *Home* cases were distinguished on three grounds. First, the *Home* reasoning was inapplicable because the action in *Pacific Land* was fundamentally a law enforcement action designed to protect the public. Second, the purpose of the notice requirement of allowing defendant to know the size of the class so as to assess what resources to marshall in its defense was inapplicable because the size of the civil penalties sought by the Attorney General—$2,500 for each violation—would ordinarily provide defendant with sufficient incentive to mount a vigorous defense. Finally, there was little danger of one-way intervention because other lawsuits were unlikely if the state's suit failed despite its vast resources unavailable to a private plaintiff. The court concluded that "'renewed harrassment [by class members not bound by notice of the action] is nothing but a remote theoretical possibility.'" (20 Cal.3d at p. 20.)

In *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362 [149 Cal.Rptr. 360, 584 P.2d 497], the court again expressly declined to indorse the reasoning in the *Home* cases. Instead, the court held that "a defendant waives whatever due process rights it may possess when it voluntarily accedes to a trial court decision on the merits of an issue before notice is provided to absent class members." (*Id.* at p. 373.)

The Supreme Court has urged trial courts to be procedurally innovative and "incorporate procedures from outside sources in determining whether to allow the maintenance of a particular class suit. More specifically, we have directed them to rule 23 of the Federal Rules of Civil Procedure . . . ." (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 453 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) In this case the trial court appropriately followed federal procedure of allowing a decision on the merits without prior notice in certain class actions.

Rule 23(b)(2) does not require notice for class actions, which, like this case, primarily seek declaratory or injunctive relief. Although federal courts have ordered notice to absent class members in rule 23(b)(2) actions, notice serves no purpose where there are no factual disputes and the plaintiff class is adequately represented by counsel. (*Elliot* v. *Weinberger* (9th Cir. 1977) 564 F.2d 1219, 1229.)

Defendants specifically assert that the procedure adopted by the trial court deprived them of their right to "know what they were litigating," of the ability to address important issues after being told of the scope of the action, and subjected them to the dangers of one-way intervention.[1] None of these assertions is persuasive.

We cannot believe that defendants seriously contend that they did not "know what they were litigating." They vigorously defended the challenged regulation and contested class status in the court below and continue to do so on appeal. They also point to no important issues that they have been deprived of addressing after being told of the scope of the action. In fact, defendants concede that if relief is limited to the declaratory judgment they "are no worse off than they would have been had the named plaintiffs simply brought individual actions . . . ."

Defendants contend, however, that the granting of a peremptory writ of mandate for the class would have subjected them to the dangers of one-way intervention. There is no danger of one-way intervention in this

---

[1]Defendants cite *Kass* v. *Young* (1977) 67 Cal.App.3d 100 [136 Cal.Rptr. 469], for authority for the proposition that a failure to certify a class as proper and order notice to its members prior to reaching the merits of the case deprives the trial court of jurisdiction. *Kass* does not so hold. In *Kass* there was *no* certification of the class and a default judgment was entered against defendant. In this case the trial court simultaneously certified the class and ruled on the merits pursuant to its charge to certify the class as soon as practicable. (See *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d at p. 453.)

case. The primary issue in this case is a matter of law. There are no factual disputes. Had plaintiffs lost on the merits, the doctrine of stare decisis would have made the likelihood of new litigation by AFDC recipients not bound by notice of this action "'...a remote theoretical possibility.'" (See *People* v. *Pacific Land Research Co., supra,* 20 Cal.3d at p. 20.) A class definition allowing the plaintiff class a redetermination of past grants could have done nothing to increase the possibility of one-way intervention. The only danger of multiple litigation posed in this case results from a failure to grant a writ of mandate for the class, thus necessitating that individual class members bring suit to recover past benefits wrongfully withheld.

### III

■   Finally, plaintiffs contend the trial court abused its discretion in certifying the class for purposes of declaratory relief only and failing to grant a peremptory writ of mandate compelling defendants to recalculate class members' past grants. We can find no support in the record for the trial court's failure to grant such relief.

■   State general assistance funds withheld in accordance with an invalid regulation constitute a debt of the state effective as of the date of application. (*Mooney* v. *Pickett* (1972) 26 Cal.App.3d 431, 436 [102 Cal.Rptr. 708].) Defendants' argument that *Mooney* is inapplicable because there was no finding that any individual member of the class was entitled to benefits wrongfully withheld is unconvincing. *Mooney* was a class action in which part of the relief ordered was the determination of eligibility of the class members at their date of application in order that the benefits to which they were entitled could be calculated. Nothing more is required in this case.

Defendants urge the trial court's definition of the class be sustained on one of two alternative theories. First, affirmation is urged on the premise the court correctly found that class relief could not be ordered pursuant to Welfare and Institutions Code section 10962 and Code of Civil Procedure section 1094.5. Alternatively, defendant argues the trial court impliedly found the class definition requested by plaintiffs was unascertainable and this finding was an appropriate exercise of discretion. Both of these arguments must fail.

Welfare and Institutions Code section 10962 is a provision for individual treatment of applications for aid. The fair hearing scheme, of

which it is a part, does not contemplate class relief. As such, section 10962 does not constitute a bar to class actions. (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93].) Although this section is an inappropriate vehicle by which to seek class relief, as we explain below, plaintiffs' partial reliance upon it in their complaint does not preclude the court from granting an appropriate writ of mandate.

■ Code of Civil Procedure section 1094.5 is also an inappropriate mechanism by which to grant relief for the class that plaintiffs represented. The purpose of Code of Civil Procedure section 1094.5 is to inquire into the validity of a final administrative order. (*State of California* v. *Superior Court* (*Veta Co.*) (1974) 12 Cal.3d 237, 245 [115 Cal.Rptr. 497, 524 P.2d 1281]; cf. *Hypolite* v. *Carleson* (1975) 52 Cal. App.3d 566, 572-574 [125 Cal.Rptr. 221].) The class that plaintiffs sought to represent did not consist only of those individuals who had completed their administrative appeals process and received adverse fair hearings decisions. Therefore, peremptory writs of mandate to set aside final administrative decisions could not be ordered. (*State of California* v. *Superior Court* (*Veta Co.*), *supra*, 12 Cal.3d at p. 245.)

The fact that plaintiffs inappropriately specified Code of Civil Procedure section 1094.5 as the vehicle for the requested relief of reconsideration of child care expenses according to a reasonableness standard should not be fatal to their effort to procure relief for the class. The appropriate vehicle for the court below to order such relief is Code of Civil Procedure section 1085, the traditional mandamus action. This writ is appropriate to enforce ministerial duties. (*Gong* v. *City of Fremont* (1967) 250 Cal.App.2d 568, 572 [58 Cal.Rptr. 664].)

■ It is established that mandate may issue despite the form of the petition or its prayer for prohibition. (5 Witkin Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 183-184, pp. 3942-3944.) The rationale behind this rule, that a plaintiff's cause of action will not be defeated because of an error in specifying the appropriate form of mandamus, applies equally to a mistaken request for Code of Civil Procedure section 1094.5 mandamus when Code of Civil Procedure section 1085 is appropriate. The complaint here otherwise alleges facts sufficient to warrant the relief requested.

Alternatively, defendant contends that the trial court impliedly found that a class definition allowing retroactive benefits would not meet the

class requirements of ascertainability and community of interest set forth by *Daar* v. *Yellow Cab* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]. This argument is also unconvincing.

The trial court in fact found that a class of current AFDC recipients disallowed actual expenditures as a work deduction solely because of MPP section 44.113.241(b), was ascertainable. There is substantial evidence in the record to support this conclusion inasmuch as each child care plan is individually certified. At a minimum the class that the trial court certified for purposes of declaratory relief is entitled to recalculation of past benefits.

Defendants erroneously rely on *City of San Jose* v. *Superior Court, supra*, 12 Cal.3d 447, for authority that there is an insufficient community of interest to sustain a class definition for purposes of retroactive relief. *City of San Jose* was a class action for nuisance and inverse condemnation brought against the city by individuals who owned land near the municipal airport. The court found that there was insufficient community of interest for the class because the substantive theory of law required that each plaintiff make a highly individualized showing of fact in order to establish their right of recovery against the defendant. By contrast, a common question of fact exists for the plaintiff class in this case. That question is whether or not the recipients were denied benefits *solely* because of the invalid regulation. (See *Hypolite* v. *Carleson, supra*, 52 Cal.App.3d at p. 580.) Moreover, as the court in *Daar, supra*, 67 Cal.2d 695, recognized, a class does not suffer from an insufficient community of interest simply because its members will have to make a factual showing to determine the *amount* of their damages.

The class action is a product of the court of equity. "It rests on considerations of necessity and convenience, adopted to prevent a failure of justice." (*City of San Jose* v. *Superior Court, supra*, 12 Cal.3d at p. 458.) ▮ Here, the plaintiff class has established its right to recover benefits withheld from its members solely on the basis of an invalid regulation. The trial court's certification of the class for purposes of declaratory relief only, allows a failure of justice inasmuch as it deprives the class of a means by which to enforce its right. It also does not serve the purposes of necessity and convenience to the parties and the court. Instead, it invites each class member to individually bring suit to enforce his right. Since "there is no particular magic" to a date defining a class for purposes of recalculation of payments wrongfully withheld (*Hypolite* v. *Carleson, supra*, 52 Cal.App.3d at p. 585), we

hold that the failure to define the class under the circumstances of this case so as to provide for the payment of any such benefits is an abuse of discretion. (*State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].)

The judgment is reversed insofar as it certifies the class as restricted to current recipients of AFDC; the cause is remanded for proceedings to recertify the class for recomputation of past benefits and to make appropriate orders not inconsistent with this opinion; in all other respects the judgment is affirmed. Plaintiffs shall recover costs on appeal.

Blease, J., and Sakuma, J.,* concurred.

The petition of defendants and appellants for a hearing by the Supreme Court was denied August 20, 1980.

---

*Assigned by the Chairperson of the Judicial Council.