[Civ. No. 45380. First Dist., Div. Two. Feb. 6, 1981.]

DARLENE GONZALES et al., Plaintiffs and Appellants, v.
WESLEY JONES as Director, etc., et al.,
Defendants and Respondents.

■■■■■■

■■■■■■

■■■■■■

■■■■■■

COUNSEL

Ray Lewis Fuller, Frank M. Garcia and H. David Grunbaum for Plaintiffs and Appellants.

Selby Brown, Jr., County Counsel, and Robert A. Weers, Deputy County Counsel, for Defendants and Respondents.

OPINION

**TAYLOR, P. J.**—General assistance (GA) recipients[1] appeal from an order denying class certification in these consolidated actions challenging Santa Clara County (County) policies and regulations providing for termination of GA benefits for a fixed durational period for GA recipients who failed to cooperate without good cause in the County's "work for relief" program. The recipients contend that the trial court: (1) erred to their prejudice by denying class certification despite its finding that a prima facie case for class certification had been met; (2) used the wrong criteria and abused its discretion in ruling that their claims to retroactive benefits had to be determined on an individual basis. For the reasons set forth below, we have concluded that the order must be reversed.

As the underlying facts are not in dispute, we have adopted our statement of facts from that of the County with appropriate additions and deletions based on the pertinent record before us.

---

[1]The consolidated action was filed by three GA recipients (Gonzales, Evans and Camacho) and a welfare rights organization (Welfare Recipients League, Inc.) against the members of the County board of supervisors and the director of the County's social services department (Jones).

The initial complaints filed in early May 1977, sought injunctive and declaratory relief as well as mandate to challenge on numerous federal and state constitutional grounds the validity of the County's then six-month period of ineligibility imposed on employable GA recipients who had failed to cooperate in the County's "work for relief" program[2] without good cause. On May 31, 1977, the County's board of supervisors amended its GA policy to provide for a uniform 60-day period of ineligibility applicable to both GA applicants and GA recipients.[3] The County answered and denied the class action and substantive allegations. After a hearing on the recipients' motion for class certification, the recipients filed selected answers to interrogatories and admissions of fact and a memorandum of points and authorities. The County's opposition included the declarations of its assistant director of social services (Stobbe), who stated that retroactive benefits had to be determined on an individual basis. However, the declaration of the county counsel indicated that the County's administrative machinery could readily calculate retroactive benefits.

After hearing extensive arguments and examining the evidence presented, the court on October 3 entered its preliminary order denying the motion for class certification. The court ruled that since the County's former six-month period of ineligibility had been repealed, this issue was moot as to prospective relief, but pointed out that the validity of the former six-month period and the new sixty-day period was a justiciable issue and potentially the matter could be tried as a class action. The court also ruled that retroactive GA benefits could not be awarded on a class basis because the issues relating to each individual's entitlement to retroactive recovery were too numerous and substantial to warrant the use of the class action device. The court directed the recipients to amend their complaints and motion for certification.

Subsequently, the complaints, as amended, realleged all of the causes of action and constitutional grounds, and further alleged that *any* durational period of ineligibility was invalid, and that the County's

---

[2]The program implements Welfare and Institutions Code section 17200, which provides: "Work may be required of an indigent, who is not incapacitated by reason of age, disease, or accident, as a condition of relief. Such work shall be created for the purpose of keeping the indigent from idleness and assisting in his rehabilitation and the preservation of his self-respect."

[3]The program is designed to help GA recipients acquire job-related skills and good work habits. As an incentive to maintain participation, the County furnishes GA grants only to those employable recipients who are actively engaged in the program.

administrative fair hearing procedure for GA recipients violated the procedural due process guarantees of the federal and state Constitutions. The overall class alleged was all persons who had ever received GA benefits and subsequently were rendered ineligible by the challenged County policies. The first subclass was comprised of all persons rendered ineligible for six months from May 23, 1972, through May 31, 1977; the second, of all persons who received GA but were rendered ineligible for assistance under the sixty-day revision of May 31, 1977.[4]

The County's policies required termination for a fixed durational period after a finding that a recipient had failed to attend a scheduled work, training or vocational appointment "for good cause." The County's GA regulations also provided that if a recipient consistently failed to participate in the "work for relief" program without good cause, the recipient "shall be ineligible" to receive GA for a specified period. The County's stated grounds for discontinuance of a recipient's grant included refusal, without good cause, to accept an offer of employment or referral to a training program, and frequent unexcused absences from work assignment projects and social services department appointments. The County admitted that it had neither a written nor operational definition of "good cause" and that the imposition of the durational period of ineligibility was not conditioned upon a finding of wilful or intentional failure to cooperate without good cause.

Subsequently, in a memorandum of decision, the court reiterated its denial of the recipients' motion to certify the class. In doing so, the court set forth its reasons, so far as pertinent, as follows: *"There is no question but that there is an ascertainable class with a well-defined community interest in a single question of law.* However, there are many subsidiary and ancillary questions of fact to be decided which are peculiar to each individual welfare claimant. This myriad of issues peculiar to each individual must unquestionably be handled on an individual basis. Due to the nature of the class and the attorneys representing both the class and the league (which is specifically for the benefit of welfare recipients) it is highly likely that an individual will pursue this possible right (to declare illegal or unconstitutional the compulsory disqualification). In addition thereto, it is highly likely that

---

[4]The amended complaint alleged that under the revised policy and regulations, there was an equal protection issue as to the 60-day period for applicants and 6-month period for recipients. The County documents indicate a uniform period for both groups after May 31, 1977.

great segments of the two classes (the sixty-day and six-month groups)[5] would lose their qualifications as class members during the course of litigation because of the temporary vacillating and changing profile of public assistance recipients.

"It is for these reasons that the Court will order that the motion to certify these as class actions be denied:

"1. Though the complaints and petitions present prima facie cases warranting class certification, upon closer scrutiny *the enormous amount of subsidiary and individualized issues overbear the community issue.*

"2. There is no question in the Court's mind but that this case will be prosecuted on an individual basis which will be just as efficacious in proving or disproving the validity of the questioned regulation. Individual action does not have attendant upon it all of the ramifications and problems of a class action *which will require expensive notice procedures.* See *McGhee* v. *Bank of America Nt&SA,* 60 CA3d 442" (italics added).

■ ■ ■ ■ Subsequently the court also denied the recipients' request for findings and conclusions[6] pursuant to California Rules of Court, rule 232(f).

---

[5]We note that the County's former apparently irrational similar treatment of two groups situated differently sets forth a prima facie allegation of a substantial denial of equal protection (cf. *Hagans* v. *Lavine* (1974) 415 U.S. 528, pp. 538-539 [39 L.Ed.2d 577, pp. 588-589, 94 S.Ct. 1372]).

[6]Contrary to the recipients' contention, the denial was proper. To properly dispose of this procedural issue, we augment the record (Cal. Rules of Court, rule 12(a)) on our own motion to include a copy of their request for findings and conclusions. The recipients' contentions predicated on the Los Angeles Superior Court rules on this matter were considered and rejected by this court (Div. Four) in *Hypolite* v. *Carleson* (1975) 52 Cal.App.3d 566, 578 [125 Cal.Rptr. 221]. Findings of fact are not required for an order made after the granting or denial of a motion, even where, as here, the motion is heard upon evidence and the resulting order is appealable (*In re Marriage of Simmons* (1975) 49 Cal.App.3d 833, 836-837 [123 Cal.Rptr. 213]; *Lauer* v. *Rose* (1976) 60 Cal.App.3d 493, 496 [131 Cal.Rptr. 697]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 306, pp. 3114-3115). *Morrissey* v. *City and County of San Francisco* (1977) 75 Cal.App.3d 903, 906-908 [142 Cal.Rptr. 527], cited by the recipients, is inapposite, as it simply held, at page 907, that an order denying certification of a class action is appealable. Even if the lower court's ruling were reversed for failure to issue findings, the appropriate remedy is a remand to the trial court to prepare and file such findings (*McBride* v. *Alpha Realty Corp.* (1975) 49 Cal.App.3d 925, 930 [123 Cal.Rptr. 270]). Such a procedure would only delay a decision on the main issue on appeal and increase the costs of the parties. We note, however, that the County's contention that the order

■ As indicated above, the recipients' major contention on appeal is that the trial court erred and abused its discretion by using the above defined criteria to deny class certification.

The court below recognized that the prerequisite of a class action (an ascertainable class with a well-defined community of interest in questions of law and fact) had been met (Code Civ. Proc., § 382; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]). *Rogers* v. *Detrich* (1976) 58 Cal.App.3d 90, at page 103 [128 Cal.Rptr. 261], held that recipients of federal supplemental security income (SII) were a proper class, although there were four subclasses and each plaintiff did not rely on the same facts. Similarly, in *Cavanaugh* v. *State of California* (1978) 85 Cal.App.3d 354, 360 [149 Cal.Rptr. 453], the rights of each member of the class (tenants entitled to relocation benefits) were not dependent on facts applicable only to him. Here, the wrong in each case is the imposition of the fixed durational sanction of denying GA benefits to GA recipients who failed to cooperate without good cause in the County's "work-for-relief" program.

As the recipients point out, only as a class can the rights of all the recipients be protected. The courts of this state must be especially vigilant in protecting the rights of the instant transitory recipients[7] who have no access to other forums, as GA benefits are totally funded by the County acting as an agent of the state (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 679 [94 Cal.Rptr. 279, 483 P.2d 1231]; cf. *Silva* v. *Vowell* (5th Cir. 1980) 621 F.2d 640, at pp. 649-650). The trial court's ruling also ignored the "debt" theory of the right to retroactive class benefits discussed by this court in *Hypolite* v. *Carleson*, supra, 52 Cal.App.3d 566, at pages 583-585.

In a similar context, the United States Supreme Court recently recognized that the chain of causation by which recipients establish eligibility for retroactive benefits depends on "numerous missing links, which can be supplied, if at all, *only by* the State and *members of the plaintiff class* ...." (*Quern* v. *Jordan* (1979) 440 U.S. 332, at p. 347 [59 L.Ed.2d 358, at p. 371, 99 S.Ct. 1139]; italics added.) At oral argu-

---

of October 3 was final is groundless; that initial order denying class certification was a preliminary one and reviewable on this appeal.

[7]By the time of oral argument, some of the plaintiff-recipients had disappeared. To us, the temporary vacillating and changing profile of the recipients further demonstrates the necessity for a class action to protect the rights of all entitled recipients.

ment, the County conceded that (contrary to the trial court's conclusion), suits by individual recipients were unlikely, as the claims were not likely to exceed $100 per recipient. The County also conceded that assuming the invalidity of the challenged policies and regulations, all eligible recipients should receive the GA benefits. The County argued that the size of the class was a barrier. However, neither the size nor its geographic distribution are a barrier where class requirements are met. Thus, recently a federal court certified a nationwide class of AFDC recipients who challenged fixed-length sanctions against persons who failed "without good cause" to participate in the WIN program (*Crosby* v. *Califano* (Ill. July 1980) 14 Clearing House Rev. 602 (Nov. 1980)). A nationwide class for SII beneficiaries also was specifically approved in *Califano* v. *Yamasaki* (1979) 442 U.S. 682 [61 L.Ed.2d 176, 99 S.Ct. 2545, at p. 2548], decided June 20, 1979. We conclude that here, after the class determination of the common questions of law as to the constitutionality of the County's regulations and policies, the subsidiary questions of individual entitlement and County residence can be determined and calculated more easily and economically by the County's administrative processes.

As to the notice requirement on which the trial court also relied, this question was recently discussed and an argument substantially similar to that of the County here rejected in *Lowry* v. *Obledo* (1980) 111 Cal.App.3d 14,[8] at pages 22 and 23 [169 Cal.Rptr. 732] as follows: "Defendants principally rely on *Home Sav. & Loan Assn.* v. *Superior Court* (1974) 42 Cal.App.3d 1006 ..., and *Home Sav. & Loan Assn.* v. *Superior Court* (1976) 54 Cal.App.3d 208 .... These cases hold that a defendant against whom a class action is brought has a due process right to obtain class certification and notice to class members before determination of the merits of the action. This rule attempts to prevent 'one-way intervention' by which members of the class may join in the action if the outcome is favorable to their interests but avoid the binding effect of an unfavorable judgment because of their lack of notice.

[8]In *Lowry*, recipients of aid to families with dependent children (AFDC) brought a class action seeking to have a state regulation concerning the AFDC program declared invalid and to have class members benefits recalculated. The Court of Appeal reversed the trial court's denial of mandate insofar as it certified the class as restricted to current recipients and remanded for proceedings to recertify the class for recomputation of past benefits. *Lowry* was first cited to us at oral argument; the same is true of *Green* v. *Obledo*, 3d Civ. No. 17652, filed Dec. 18, 1979, in which class certification was denied and a hearing granted by our Supreme Court on February 20, 1980.

"The California Supreme Court has expressly declined to indorse the *Home* cases and has found their reasoning inapplicable in two instances. In *People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10 . . ., the court held that notice to class members was not required in a class action brought by the Attorney General alleging fraud in the sale of lands and seeking an injunction, restitution and civil penalties. The *Home* cases were distinguished on three grounds. First, the *Home* reasoning was inapplicable because the action in *Pacific Land* was fundamentally a law enforcement action designed to protect the public. Second, the purpose of the notice requirement of allowing defendant to know the size of the class so as to assess what resources to marshall in its defense was inapplicable because the size of the civil penalties sought by the Attorney General—$2,500 for each violation—would ordinarily provide defendant with sufficient incentive to mount a vigorous defense. Finally, there was little danger of one-way intervention because other lawsuits were unlikely if the state's suit failed despite its vast resources unavailable to a private plaintiff. The court concluded that '"renewed harrassment [by class members not bound by notice of the action] is nothing but a remote theoretical possibility."' (20 Cal.3d at p. 20.)

"In *Civil Service Employees Ins. Co.* v. *Superior Court* (1978) 22 Cal.3d 362 . . ., the court again expressly declined to indorse the reasoning in the *Home* cases. Instead, the court held that 'a defendant waives whatever due process rights it may possess when it voluntarily accedes to a trial court decision on the merits of an issue before notice is provided to absent class members.' (*Id.* at p. 373.)

"The Supreme Court has urged trial courts to be procedurally innovative and 'incorporate procedures from outside sources in determining whether to allow the maintenance of a particular class suit. More specifically, we have directed them to rule 23 of the Federal Rules of Civil Procedure. . . .' [Citations.] In this case the trial court appropriately followed federal procedure of allowing a decision on the merits without prior notice in certain class actions."

The above reasoning applies equally here and we direct the trial court to certify the class and enter a decision on the merits without prior individual notice to all of the members of the class. If the recipients prevail on the merits of their action, the cost of their notifying the class will be

on the County (*Quern* v. *Jordan, supra,* 440 U.S. 332; *Silva* v. *Vowell, supra,* 621 F.2d 640).

The order appealed from is reversed.

Rouse, J., and Smith, J., concurred.