[No. A032128. First Dist., Div. Three. July 22, 1986.]

MARVIN G. FRAZIER et al., Plaintiffs and Appellants, v.
CITY OF RICHMOND et al., Defendants and Appellants.

## COUNSEL

Duane W. Reno, Davis & Reno and Davis, Reno & Courtney for Plaintiffs and Appellants.

Malcolm Hunter, City Attorney, and Wayne S. Nishioka, Assistant City Attorney, for Defendants and Appellants.

## OPINION

**MERRILL, J.**—In this class action on behalf of all current and retired police officers and firefighters of the City of Richmond and their successors in interest/beneficiaries who are members of a pension plan set forth in article XI of the City of Richmond Charter, the trial court determined (1) that the "salary" used to compute retirement allowances under article XI should include the holiday pay and uniform allowances provided to current police and fire department employees and (2) that City of Richmond payments for group life and disability insurance and contributions toward health, medical, dental, hospitalization and prescription drug plans should not be deemed "salary" for retirement computation purposes. Plaintiffs Marvin G. Frazier et al. (hereafter Officers) appeal from the latter determination. Defendant City of Richmond (hereafter City) appeals from the former.

I

This action was initially filed on March 25, 1982. Officers subsequently filed a fourth amended complaint (hereafter Complaint) on August 1, 1983, in which they requested a declaration of their rights under article XI of the

City of Richmond Charter and petitioned for a writ of mandate to compel the payment of proper retirement allowances pursuant to article XI. An order certifying the case as a class action was made on December 5, 1983. Notice of this order was provided to all absent class members on January 25, 1984.

The City filed a motion for partial summary judgment on April 3, 1984. The City contended that a decision in a prior action between the parties which had determined that holiday pay and uniform allowances were not "salary" under article XI (Roy Estes et al. v. The City of Richmond, etc., et al. [Estes II] (Super. Ct. Contra Costa County, 1968, No. R-14715)) barred Officers in the instant case from suing for the inclusion of these items as "salary" under article XI. The trial court denied City's motion on September 7, 1984, holding that absent class members in the prior action had not been provided with notice that they were members of the class represented by plaintiffs and therefore, under the notice requirement of *Home Sav. & Loan Assn.* v. *Superior Court* (1974) 42 Cal.App.3d 1006 [117 Cal.Rptr. 485], the prior action could not be asserted as res judicata to the instant claim.

On December 17 and 19, 1984, the parties submitted cross-motions for summary judgment upon a joint statement of material undisputed facts.

After a hearing on January 16, 1985, judgment was entered on July 11, 1985. The judgment provided that holiday pay and uniform allowances should be deemed "salary" under article XI, while payments for group life and disability insurance and contributions toward health, medical, dental, hospitalization and prescription drug plans should be excluded from the computation of retirement allowances.

This appeal followed.

## II

■ Officers contend that City payments for group life and disability insurance and contributions toward health, medical, dental, hospitalization and prescription drug plans should be deemed "salary" under article XI of the City of Richmond Charter for retirement computation purposes. We disagree.

The interpretation and applicability of a statute or ordinance is clearly a question of law (*Dean W. Knight & Sons, Inc.* v. *State of California* ex rel. *Dept. of Transportation* (1984) 155 Cal.App.3d 300, 305 [202 Cal.Rptr.

44]), and is therefore within the independent review function of this court. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 241, p. 246.)

A determination of the scope of the term "salary" as used in article XI of the City of Richmond Charter necessitates a review of those provisions which define the police and firemen's pension fund. Two provisions are of key importance to this inquiry.

Section 2 provides in pertinent part that: "Any member of the police or fire departments . . . shall . . . be retired from further service in such department, and shall thereafter, during his lifetime, be paid in equal monthly installments from said Fund, a yearly pension equal to one-half (½) of the *annual salary attached to the rank or position* held by him in such department one (1) year prior to the date of such petition, or such order of said Board; provided, that in case of any change in *salary* at any time after such retirement for such rank or position, the pension shall after each and every such change, be one-half (4) of such *salary* as changed." (Italics added.)

Section 7 further provides that: "Any member of either the police or fire departments who desires to be retired on a pension shall file with the Pension Board a verified petition which shall contain the name and age of the petitioner, the rank or position held by him on the date of filing the petition, the *salary* of said rank or position, the rank held and the *salary received by said petitioner* one (1) year prior to the date of filing said petition, the date of entry into the service, and the aggregate service of said petitioner." (Italics added.)

In interpreting these provisions, we preliminarily note that the applicable rule of statutory construction provides that "[u]nder the guise of construction, a court should not rewrite the law, add to it what has been omitted, omit from it what has been inserted, give it an effect beyond that gathered from the plain and direct import of the terms used, or read into it an exception, qualification, or modification that will nullify a clear provision or materially affect its operation so as to make it conform to a presumed intention not expressed or otherwise apparent in the law." (58 Cal.Jur.3d, Statutes, § 86, pp. 436-437, fns. omitted.)

Several reasons compel our conclusion that the term "salary" as used in article XI does not include payments for insurance and medical plan contributions. First, the drafters of article XI consistently used the term "salary" in the article XI retirement computation formulas. The broader word "compensation" was not used in lieu of "salary" even though the drafters were conscious of the word "compensation" as evidenced by their use of that word in other portions of article XI. Nor were the words "fringe benefits"

or "other benefits" used in the pension contribution formulas. It is clear that the drafters could have used these words in the computation formulas if it was their intention to provide broad pension benefits. Their failure to do so shows an absence of such an intent.

Moreover, the contexts in which the word "salary" was used in the charter provisions suggest that the drafters specifically intended to exclude payments for insurance and medical plan contributions from the retirement computation formulas. Section 7 provides that retirement allowances shall be based upon the "salary received by said petitioner." The plain meaning of these words is clear: under article XI "salary" has the characteristic of being received by the officer. It would not include payments for insurance and medical plan contributions which are received by third parties.

We therefore affirm the lower court's determination that City payments for group life and disability insurance and contributions toward health, medical, dental, hospitalization and prescription drugs are not "salary" under article XI of the City of Richmond Charter.

### III

City contends that the issue of whether holiday pay and uniform allowances are "salary" under article XI of the City of Richmond Charter was litigated in Estes II and is, therefore, res judicata to this action. We agree.

"The doctrine of res judicata provides that a final judgment on the merits bars the parties or those in privity with them from litigating the same cause of action in a subsequent proceeding and collaterally estops parties or those in privity with them from litigating in a subsequent proceeding on a different cause of action any issue actually litigated and determined in the former proceeding. [Citations.] The application of the doctrine in a given case depends upon an affirmative answer to three questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? [Citations.]" (*Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc.* (1981) 120 Cal.App.3d 622, 628-629 [174 Cal.Rptr. 527].)

In the instant case, the first question must be answered in the affirmative. In Estes II the trial court was asked to determine whether the plaintiff class, members of the Richmond Police and Firemen's Pension Fund, was receiving the full amount of retirement benefits to which it was

entitled under article XI of the City of Richmond Charter. The court specifically found that holiday pay and uniform allowances do not constitute a part of "salary" for pension computation purposes under article XI. In the present action, Officers' complaint similarly requests a declaration of plaintiffs' rights under the article XI retirement plan. Officers allege that City has refused to properly include such items as holiday pay and uniform allowances as "salary" in its retirement allowance computations. It is evident that the issues determined by the judgment in Estes II are precisely those raised by Officers' complaint in this action.

The second question must also be answered affirmatively. The trial court's findings of fact and conclusions of law in Estes II are clearly a judgment on the merits (see 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 217, pp. 654-655) which is now final. (*Op. cit. supra,* §§ 211-212, pp. 648-650.)

Finally, the parties to the instant action are identical to or in privity with the parties in Estes II. The plaintiff class in Estes II included all eligible and retired members of the Richmond Police and Firemen's Pension Fund. The plaintiff class in the present action similarly comprises all eligible and retired members of the plan. Because all current members of the pension plan in this action were members of the plan in 1968 when Estes II was decided, and since no new members have been added since 1964, there is an identity of the parties to the actions. (See 7 Witkin, *op. cit. supra,* § 283, p. 721.)

The instant class also includes successors in interest/beneficiaries, specifically surviving spouses of former employees. Although these plaintiffs were not members of the Estes II plaintiff class, *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098], affirms that the concept of privity applies to a relationship between a party to the first action and a party to a subsequent action which is "sufficiently close" to justify application of collateral estoppel. In the instant case, the class of surviving spouses is "sufficiently close" to the plaintiff class in Estes II because the computation of pension benefits paid to former spouses under article XI depends upon the same interpretation of "salary" as that used to determine the benefits paid to the former employees themselves or to current members of the pension plan. It is thus evident that the class of surviving spouses in this case is in privity with the plaintiff class in Estes II.

■ Notwithstanding expanded notions of privity, collateral estoppel may be applied with respect to nonparties only if the requirements of due process are met. "Due process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the losing party

in the first action. [Citations.] The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication." (*Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 948 [119 Cal.Rptr. 139].) "Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation. [Citations.]" (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at p. 875; see 7 Witkin, Cal. Procedure, *supra*, Judgment, § 288, pp. 724-726.)

■ The class of surviving spouses in the present action clearly has an identity of interest with the plaintiff class in Estes II. It is evident that both plaintiff classes requested a declaration of their rights under article XI of the City charter; in particular, they sought a determination that holiday pay and uniform allowances were "salary" and, as such, should be included in the computation of retirement benefits. Thus, the concerns of the surviving spouses were adequately represented by the plaintiff class in Estes II. Furthermore, because the deceased members, through whom the surviving spouses are receiving benefits, were all employed by the City prior to Estes II, it is clear that the class of surviving spouses should reasonably have expected to be bound by the Estes II decision. Under these circumstances, it can fairly be said that the due process rights of the nonparties have been adequately protected.

■ Officers argue that the judgment in Estes II cannot be asserted as res judicata because absent class members in Estes II were not provided with notice pursuant to *Home Sav. & Loan Assn.* v. *Superior Court, supra,* 42 Cal.App.3d 1006. We find this argument unpersuasive.

It is well established that in the absence of relevant state precedents trial courts are urged to follow the procedures prescribed in rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) for conducting class actions. (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 145-146 [172 Cal.Rptr. 206, 624 P.2d 256].) California Code of Civil Procedure section 382, the class action statute, is silent on the issue of notice. Federal rule 23, however, describes three types of class actions and defines the notice requirement applicable to each type. Subdivision (c)(2) provides that notice is mandatory in class actions defined in subdivision (b)(3); no notice is specifically required in (b)(1) and (b)(2) actions. In these latter actions, state and federal courts have generally held that notice is within the discretion of the trial court. (See, e.g., *Lowry* v. *Obledo* (1980) 111 Cal.App.3d 14, 23 [169 Cal.Rptr. 732]; *Elliott* v. *Weinberger* (9th Cir. 1977) 564 F.2d 1219, 1228-1229.)

In the instant case, Officers contend Estes II was a (b)(3) action requiring notice; City contends it was a (b)(2) action in which notice was discretionary.

Subdivision (b)(2) applies when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Subdivision (b)(3) applies when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Class actions are very diverse in nature. The language of subdivisions (b)(2) and (b)(3) will overlap in certain situations and the trial court must be vested with considerable discretion in determining under which subdivision the action will proceed.

Officers urge that the notice requirement in *Home Sav. & Loan Assn., supra,* should be applied to Estes II. *Home Savings* was an action in which borrowers alleged that the lender's late charges imposed on promissory notes were invalid. Plaintiffs/borrowers sought damages and a declaration that the late charge provisions were void. (*Home Sav. & Loan Assn., supra,* 42 Cal.App.3d at p. 1009.) The lower court ordered a trial on the merits before a determination of (1) the action's suitability as a class action, (2) the membership of the class, and (3) the form of notice to be given class members (*id.,* at p. 1010), and the lender applied for a writ of prohibition. (*Id.,* at p. 1008.) The issue before the Court of Appeal was whether the merits could be determined prior to a court ruling on class certification and notice. Neither side raised the question of whether or not notice was required. The issue therefore was *when* notice should be given, not *if* notice should be given.

The Court of Appeal issued the writ, holding that a defendant has a right to have class certification and notice issues resolved prior to a determination on the merits to preclude "so-called 'one-way intervention,'" a procedure under which potential members of the class can reserve their decision to become part of the class until the validity of the cause asserted by the named plaintiffs on behalf of the class has been determined." (*Id.,* at p. 1011.) The court noted that "[w]hile one-way intervention has obvious attractions for members of the class on whose behalf an action has been brought in that it creates for them a no-lose situation, for a defendant it holds the

terrors of an open-ended lawsuit that cannot be defeated, cannot be settled, and cannot be adjudicated." (*Ibid.*)

Several considerations demand that we reject *Home Savings* as mandating a notice requirement in Estes II. Preliminarily, because the court in *Home Savings* never addressed *whether* notice was required but, rather, cited to federal rule 23(c)(2) which specifies the notice required in (b)(3) actions (*id.*, at p. 1012), we must assume that the court deemed *Home Savings* a (b)(3) action, in which mandatory notice was required. Thus, the court's conclusion that notice is required prior to a determination of the merits is applicable only in those cases in which notice is mandatory to all identifiable members of the class—in (b)(3) actions. California courts have not determined whether the *Home Savings* decision is applicable in (b)(1) and (b)(2) actions in which notice is discretionary. (See *Employment Development Dept.* v. *Superior Court* (1981) 30 Cal.3d 256, 265, fn. 10 [178 Cal.Rptr. 612, 636 P.2d 575].)

Estes II was not an action predominantly in the nature of money damages. Rather, it is more properly characterized as a declaratory action in which the request for monetary relief will not destroy (b)(2) status. (See *Gonzales* v. *Jones* (1981) 116 Cal.App.3d 978 [171 Cal.Rptr. 567] [(b)(2) status permitted in an action for injunctive, declaratory and mandamus relief, including a request for retroactive general assistance benefits]; *Lowry* v. *Obledo, supra,* 111 Cal.App.3d 14 [(b)(2) status permitted in an action to have a provision of the AFDC program declared invalid and for recomputation of past benefits under the program]; *Souza* v. *Scalone* (N.D.Cal. 1974) 64 F.R.D. 654, vacated on other grounds (9th Cir. 1977) 563 F.2d 385 [(b)(2) status permitted in an action to enjoin an age requirement in a pension plan and to recover past benefits denied because of the age requirement].) Thus, where the monetary relief sought is integrally related to and would directly flow from the injunctive or declaratory relief sought, 23(b)(2) status is appropriate. (*Gravenstein* v. *Campion* (D.C.Alaska 1981) 540 F.Supp. 7, 12; *Robinson* v. *Lorillard Corporation* (4th Cir. 1971) 444 F.2d 791, 802 [21 A.L.R.Fed. 453].) Moreover, any doubts as to whether an action should be classified under 23(b)(2) or 23(b)(3) should be resolved in favor of (b)(2) status. (7A Wright & Miller, Federal Practice and Procedure (1972) Civil, § 1775, p. 31.)

Inasmuch as Estes II can be classified as coming within federal rule 23(b)(2), we must address whether the *Home Savings* notice requirement is applicable to such an action.

We decline to expand the scope of *Home Savings* for several reasons. First, to do so would abrogate federal rule 23(c) and the case law decided thereunder which provides that notice in (b)(2) actions is discretionary.

Second, the ill sought to be corrected in *Home Savings,* the danger of "one-way intervention," was not present in Estes II because clarification of the term "salary" as used in article XI of the City of Richmond Charter affected all members of the retirement plan with equal force, thereby minimizing the risk of subsequent lawsuits on the same issue. Nor can the City argue that failure to provide notice to absent class members created a situation in which the City was ignorant as to the size of the class and the extent of resources required to adequately prepare its defense. (See *Gonzales* v. *Jones, supra,* 116 Cal.App.3d at p. 986, citing *People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 20 [141 Cal.Rptr. 20, 569 P.2d 125].) In Estes II, the City had knowledge of the size of the class—all members of the retirement plan—and had the information available with which to compute the potential financial effects of an adverse judgment.

Third, "notice serves no purpose where [as in Estes II] there are no factual disputes and the plaintiff class is adequately represented . . . . [Citation.]" (*Lowry* v. *Obledo, supra,* 111 Cal.App.3d at p. 23; see also *Gonzales* v. *Cassidy* (5th Cir. 1973) 474 F.2d 67, 75.) Nothing in the evidence before us indicates that the class representatives or their counsel in Estes II failed to "vigorously and tenaciously protect[. . .] the interests of the entire class." (*Lewis* v. *Philip Morris, Inc.* (E.D.Va. 1976) 419 F.Supp. 345, 352, vacated on other grounds (4th Cir. 1978) 557 F.2d 1135.) It is clear that the representative plaintiffs raised "those claims 'reasonably expected to be raised by the members of the class.' [Citation.]" (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 464 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) Furthermore, there is no suggestion that the absent class members in Estes II would have raised any different issues, offered any other evidence, or sought any additional relief if they had received notice.

Fourth, Estes II is not an action where it can be said that by failing to receive notice an absent class member may have suffered a detriment by being deprived of an opportunity to opt out of the action. The result in Estes II would apply the same way to a member of the alleged class whether he opted out of the action or stayed in.

Officers would have us hold that the absent class members in Estes II were not adequately represented because the named plaintiffs in that action failed to file an appeal from that portion of the trial court's judgment adverse to plaintiffs' claims. Officers strenuously assert that *Pettway* v. *American Cast Iron Pipe Co.* (5th Cir. 1978) 576 F.2d 1157 and *Gonzales* v. *Cassidy, supra,* 474 F.2d 67, are controlling here. Although the Fifth Circuit held in each case that inadequate representation is found where the named class representatives or their counsel do not vigorously prosecute by appealing

from an adverse judgment, both cases were decided in the context of a clear conflict of interest between the named class representatives and the other class members. (*Pettway* v. *American Cast Iron Pipe Co., supra,* 576 F.2d at pp. 1177-1179; *Gonzales* v. *Cassidy, supra,* 474 F.2d at p. 75.) Because there was no conflict of interest between the class members in Estes II, we find Officers' reasoning unpersuasive. Considering the makeup of the class represented in Estes II, there is no likelihood that a different remedy would have been pursued if notice had been given to absent class members.

Officers finally argue that, pursuant to *East Texas Motor Freight* v. *Rodriguez* (1977) 431 U.S. 395 [52 L.Ed.2d 453, 97 S.Ct. 1891] and *Lopez* v. *Bergland* (N.D.Cal. 1978) 448 F.Supp. 1279, the failure of the named plaintiffs in Estes II to move for class certification constitutes inadequate representation. Because neither of the cases cited by Officers involved a factual situation similar to that in Estes II in which (1) all parties and the court treated the action as a class action throughout the proceedings and (2) the named class members provided otherwise adequate representation, we find these cases inapposite and accordingly reject Officers' argument.

We therefore determine that Estes II is a federal rule 23(b)(2) action which is governed by the discretionary notice standard embodied in 23(c). Rule 23(c) and the cases decided thereunder provide that notice in (b)(2) actions is committed to the sound discretion of the trial court. Such discretionary notice is presumptively valid, and should not be upset on appeal in the absence of an abuse of the trial court's discretion in giving notice in the manner it chose. (*Ruiz* v. *McKaskle* (5th Cir. 1984) 724 F.2d 1149, 1153.)

Because we find no abuse of discretion, we conclude that the trial court in Estes II complied with the notice requirement in rule 23(c), and hold that, in the interest of promoting judicial economy and precluding inconsistent and vexatious litigation, the doctrine of res judicata should bar the present plaintiff class from relitigating the issues resolved in Estes II. We therefore reverse the judgment of the trial court and hold that, as determined in Estes II, holiday pay and uniform allowances are not "salary" for the purpose of computing retirement allowances under article XI of the City of Richmond Charter. Any inclusion of these items should come by way of legislation.

## IV

The portion of the judgment adjudging that the "salary" used to compute retirement allowances under article XI should include the holiday pay and uniform allowances provided to current police and fire department employees, is reversed. The portion of the judgment adjudging that the City pay-

ments for group life and disability insurance and contributions towards health, medical, dental, hospitalization and prescription drug plans should not be deemed "salary" for retirement computation purposes, is affirmed.

Costs on appeal are awarded to City of Richmond.

Scott, Acting P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied August 14, 1986, and the petition of plaintiffs and appellants for review by the Supreme Court was denied October 16, 1986. Bird, C. J., was of the opinion that the petition should be granted.